[Cite as *Evangelista v. Horton*, 2011-Ohio-1472.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| LISA EVANGELISTA | ) | CASE NO. 08 MA 244 |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| RANDY HORTON | ) | |
| | ) | |
| DEFENDANT-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
Pleas, Juvenile Division, of Mahoning
County, Ohio
Case No. 07 JI 615

JUDGMENT:     Modified and Affirmed in part.
Reversed and Remanded in part.

APPEARANCES:

For Appellant:     Atty. Albert A. Palombaro
1032 Boardman-Canfield Road
Boardman, Ohio  44512

Atty. Bruce M. Broyles
164 Griswold Drive
Boardman, Ohio  44512

For Appellee:     Atty. Matthew C. Giannini
1040 S. Commons Place, Suite 200
Youngstown, Ohio  44514

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated:  March 22, 2011

WAITE, P.J.

{1} This case arose as a parentage action in the Mahoning County Court of Common Pleas, Juvenile Division. This appeal arises out of the trial court's judgment regarding visitation, child support, a change in the minor child's surname, and the allocation of the child dependency tax exemption. Appellant was designated as the residential parent, and she contends that the trial court had no basis for deviating from the standard order of visitation when granting visitation rights to Appellee. The trial court possesses broad discretion in determining visitation, and no abuse of discretion is indicated in the record of this case as to the visitation order. Appellant contends that the court should not have made an adjustment to Appellee's child support order to take into account that Appellee had custody of their minor child 56 days more than the standard visitation order. The amount of time each party has custody of the child is a factor in determining child support, and the court was again within its discretion to adjust child support accordingly. Appellant also argues that the court should not have changed the child's surname to Appellee's name without considering the best interests of the child, and she is correct that the court failed to apply the proper factors or determine the best interests of the child in making this change. Appellant's final objection is that she should have been awarded the federal child dependency tax exemption. There is a presumption that the tax exemption will be awarded to the residential parent, and Appellee did not overcome this presumption. Therefore, the court should have awarded the full tax exemption to Appellant. Appellant's third and fourth assignments of error are sustained. The

judgment is modified to reflect that Appellant may claim her child as a dependent for tax purposes, and the case is remanded to determine whether the child's surname should be changed is in the best interests of the child.

Case History

{2}     The parties' minor child was born on April 3, 2007. Appellee's paternity was confirmed by genetic testing on June 6, 2007. The Mahoning County Court of Common Pleas, Juvenile Division, adopted the paternity confirmation in a judgment entry filed June 21, 2007. On July 6, 2007, Appellee moved for shared parenting, requested an order changing the minor child's last name, and asked the court for the right to claim the minor child for federal and state income tax purposes. The trial court then issued a series of pre-trial orders granting child support to Appellant and awarding visitation rights to Appellee.

{3}     A trial in the matter was held on September 11, 2008. On October 27, 2008, the trial court issued its judgment entry. The trial court designated Appellant Lisa Evangelista as the residential parent and Appellee Randy Horton as the non-residential parent. Appellee was granted visitation on alternating weekends and alternating midweek periods. This visitation was considerably more than the standard visitation order in that visitation extended from Thursday to Monday instead of Friday to Sunday, and the midweek visitation period was also longer than that of the standard visitation order. The minor child's birth certificate was changed to name Appellee as father and the minor child's surname was also changed to Appellee's surname. Because the visitation granted to Appellee exceeded the standard order of

visitation, the trial court scheduled a child support hearing for January 7, 2009 to determine whether the excess visitation would require a modification of Appellee's child support obligations. The right to claim the minor child for federal and state income tax purposes was also to be decided at this future hearing.

**{4}** On December 3, 2008, Appellant filed her notice of appeal. The appeal was held in abeyance until the trial court could address the outstanding child support and tax exemption issues. These issues were ultimately adjudicated by a judgment entry filed on June 3, 2009. The trial court explained that child support obligations were originally calculated using the court's standard order of visitation, but the fact that Appellee enjoyed additional visitation above the standard order meant that his child support obligation required a downward deviation. The tax exemption for the minor child was awarded equally between the parties. Appellant would receive the exemption in odd-numbered years and Appellee would receive the exemption in even-numbered years.

**{5}** Appellant filed an amended brief after the remaining support issues were resolved, and Appellee filed a corresponding answer brief.

<u>ASSIGNMENT OF ERROR NO. 1</u>

**{6}** "THE TRIAL COURT ERRED IN GRANTING ADDITIONAL VISITATION TIME TO APPELLEE MR. HORTON WHEN THERE WAS NO EVIDENCE SUPPORTING A DEVIATION FROM THE STANDARD VISITATION ORDER."

**{7}** The abuse of discretion standard is used to review a trial court's decision to grant visitation. See *Booth v. Booth* (1988), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. A court abuses its discretion when it makes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Appellant contends that the trial court abused its discretion by granting additional visitation to Appellee above the court's standard order. Additionally, Appellant appears to suggest two other potential errors by the court. Appellant asserts the court did not demonstrate consideration of the factors listed in R.C. 3109.051(D). Appellant also argues that the trial court's grant of visitation stemmed from a desire to account for previous visitation withheld from Appellee.

**{8}** When the parents of a minor child are unmarried and the father seeks visitation with the child, R.C. 3109.12 is the relevant statute. R.C. 3109.12 reads, in pertinent part:

**{9}** "(A) * * * If a child is born to an unmarried woman and if the father of the child has acknowledged the child * * *.

**{10}** "(B) The court may grant the parenting time rights or companionship or visitation rights requested under division (A) of this section, if it determines that the granting of the parenting time rights or companionship or visitation rights is in the best interest of the child. In determining whether to grant reasonable parenting time rights or reasonable companionship or visitation rights with respect to any child, the court

shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code."

**{11}** Appellant's contention that the trial court abused its discretion by deviating from the standard order of visitation is without merit. A court's standard order of visitation is discussed by R.C. 3109.051(F)(2), which reads:

**{12}** "On or before July 1, 1991, each court of common pleas, by rule, shall adopt standard parenting time guidelines. A court shall have discretion to deviate from its standard parenting time guidelines based upon factors set forth in division (D) of this section."

**{13}** While trial courts often utilize a standard order of visitation, the statute clearly states that the court retains the discretion to deviate from standard parenting guidelines using the factors in division (D).

**{14}** Appellant suggests that the court's failure to demonstrate consideration of the R.C. 3109.051 division (D) factors constitutes an abuse of discretion. R.C. 3109.051(D) reads:

**{15}** "(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

**{16}** "(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the

geographical location of that person's residence and the distance between that person's residence and the child's residence;

**{17}** "(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

**{18}** "(4) The age of the child;

**{19}** "(5) The child's adjustment to home, school, and community;

**{20}** "(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

**{21}** "(7) The health and safety of the child;

**{22}** "(8) The amount of time that will be available for the child to spend with siblings;

**{23}** "(9) The mental and physical health of all parties;

**{24}** "(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

**{25}** "(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

**{26}** "(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense;

and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

**{27}** "(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

**{28}** "(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

**{29}** "(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

**{30}** "(16) Any other factor in the best interest of the child."

**{31}** The catchall provision, R.C. 3109.051(D)(16), allows the trial court to consider any relevant factor in making its determination, and to give as much weight to that factor as the court sees fit. The court is not limited to considering only the specifically enumerated factors in the statute.

**{32}** The central focus of any visitation order is the best interests of the children. *Kelm v. Kelm* (2001), 92 Ohio St.3d 223, 226, 749 N.E.2d 299. "A trial court may limit or restrict visiting rights of a party in order to further the child's best interest." *Callender v. Callender*, 7th Dist. No. 03-CA-790, 2004-Ohio-1382, at ¶31. The court has the "power to restrict the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child." Id., quoting

*Anderson v. Anderson*, 147 Ohio App.3d 513, 2002-Ohio-1156, 771 N.E.2d 303, at ¶18, and *Jannetti v. Nichol* (May 12, 2000), 7th Dist. No. 97 CA 239.

**{33}** If it is clear from the record that the court considered the factors in R.C. 3109.051, even if the statute or the factors are not specifically referenced, we will not find an abuse of discretion. *Troyer v. Troyer*, 7th Dist. No. 09 JE 5, 2010-Ohio-3276, at ¶36. "[I]t is not an abuse of discretion when it appears from the journal entry that some of the factors under that section were addressed." *Bernard v. Bernard* (Jan. 30, 2002), 7th Dist. No. 00 CO 25. Even when the trial court cites the wrong statute as the basis of the factors it is considering, if the record reveals that the proper factors were considered, the trial court's judgment regarding visitation will be affirmed. *Campana v. Campana*, 7th Dist. No. 08 MA 88, 2009-Ohio-796, ¶51; see also, *Troyer*, supra, at ¶36.

**{34}** Here, the trial court does not explicitly refer to the R.C. 3109.051(D) factors in its judgment entry. Although a portion of the trial included discussion of the factors to be considered when allocating custody of a minor child, no similar discussion centered on the R.C. 3109.051(D) factors used when granting visitation. At trial, when visitation concerns were discussed, the arguments focused almost exclusively on Appellant's position regarding the imposition of the court's standard visitation order.

**{35}** In its judgment entry, the trial court states that R.C. 3109.401 governs the dispute. R.C. 3109.401(A), the portion of the statute quoted by the trial court reads:

**{36}** "The general assembly finds the following:

**{37}** "1. That the parent and child relationship is of fundamental importance to the welfare of a child, and that the relationship between a child and each parent should be fostered unless inconsistent with the child's best interests;

**{38}** "2. That the parents have the responsibility to make decisions and perform other parenting functions necessary for the care and growth of their children;

**{39}** "3. That the Courts, when allocating parenting functions and responsibilities with respect to the child in a divorce, dissolution of marriage, legal separation, annulment, or any other proceeding addressing the allocation of parental rights and responsibilities, must determine the child's best interests;

**{40}** "4 That the Courts and parents must take into consideration the following general principles when allocating parental rights and responsibilities and developing appropriate terms of parenting plans:

**{41}** "a. Children are served by a parenting arrangement that best provides for a child's safety, emotional growth, health, stability, and physical care.

**{42}** "b. Exposure of the child to harmful parental conflict should be minimized as much as possible.

**{43}** "c. Whenever appropriate, parents should be encouraged to meet their responsibilities to their children through agreements rather than by relying on judicial intervention.

**{44}** "d. When a parenting plan provides for mutual decision-making responsibility by the parents but they are unable to make decisions mutually, they

should make a good faith effort to utilize the mediation process as required by the parenting plan.

**{45}** "e. In apportioning between the parents the daily physical living arrangements of the child and the child's location during legal and school holidays, vacations, and days of special importance, a Court should not impose any type of standard schedule unless a standard schedule meets the needs of the child better than any proposed alternative parenting plan." (10/27/09 J.E., pp. 3-4.)

**{46}** Although R.C. 3019.401(A) contains many fine principles that can be applied to a visitation order, it is not the correct statute to use in determining visitation. That statute is R.C. 3109.051(D). There are a number of indications in both the judgment entry and the trial transcript that the trial court considered the relevant R.C. 3109.051(D) factors, even though it did not use the statute per se. The judgment entry discussed the familial situations of each parent. See R.C. 3109.051(D)(1). The locations of each parent's place of residence were acknowledged. See R.C. 3109.051(D)(2). Neither parent indicated that he or she intended to relocate. See R.C. 3109.051(D)(14). The parent's work schedules were noted. See R.C. 3109.051(D)(3). The child's age was noted and discussed. See R.C. 3109.051(D)(4). The trial court noted that the minor child had no special health concerns and that both homes were suitable environments for the child. R.C. 3109.051(D)(7). The minor child's ability to interact with her siblings was discussed. R.C. 3109.051(D)(8). The mental and physical health of both parents was discussed. R.C. 3109.051(D)(9). Testimony at trial indicated there were no problems with the

child's adjustment at home and the community. R.C. 3109.051(D)(5). Appellant's willingness to schedule previously missed parenting time was also discussed at trial. R.C. 3109.051(D)(10).

{47} While the trial court did not explicitly link these considerations to the factors found in R.C. 3109.051(D), it does appear that the trial court contemplated the same underlying concepts. Therefore, the trial court's failure to explicitly cite to the R.C. 3109.051(D) factors does not appear unreasonable, arbitrary, or unconscionable and thus does not constitute an abuse of discretion.

{48} Appellant's third contention that the trial court abused its discretion by awarding extra visitation in an attempt to make up for previously denied visitation is also meritless. Appellant cites to the trial court's statement at trial questioning how Appellant would make up visitation time previously denied to Appellee. Appellant claims that the trial court's visitation determination was based on such a desire. Outside of the lone citation to the transcript Appellant makes in her argument, no other evidence in the record supports her assertion. Moreover, as noted above, the willingness of one parent to make up missed visitation time is a valid consideration of R.C. 3109.051(D). See R.C. 3109.051(D)(10). The trial court was certainly warranted in asking Appellant the question. Therefore, even if the trial court had based its visitation decision in part on Appellant's previous unwillingness to reschedule missed parenting time, it would not have abused its discretion. Here, beyond Appellant's own opinion, there is no evidence of such an action. Therefore,

the trial court did not abuse its discretion. Appellant's first assignment of error is overruled.

ASSIGNMENT OF ERROR NO. 2

**{49}** "THE TRIAL COURT ERRED IN GRANTING A DEVIATION FROM CHILD SUPPORT GUIDELINES BASED UPON APPELLEE BEING GRANTED ADDITIONAL VISITATION BEYOND THE STANDARD ORDER OF VISITATION."

**{50}** Appellate courts review child support matters for an abuse of discretion. *Booth*, 44 Ohio St.3d at 144, 541 N.E.2d 1028. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's action was unreasonable, arbitrary or unconscionable. *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140.

**{51}** Generally, the amount of child support that would be payable under a child support order, as calculated pursuant to the basic child support schedule and applicable worksheet through the line establishing the actual annual obligation, is rebuttably presumed to be the correct amount of child support due. R.C. 3119.03. However, R.C. 3119.022, which is the statutory child support worksheet, authorizes the court to order an amount of child support that deviates from the amount determined from the child support schedule and worksheet if, upon considering the factors set forth in R.C. 3119.023, the court determines that the calculated amount "'would be unjust or inappropriate and would not be in the best interest of the child.'" *Carpenter v. Reis* (1996), 109 Ohio App.3d 499, 504, 672 N.E.2d 702.

**{52}** In the instant case, the trial court found that Appellee was entitled to a deviation from his child support obligation because he had custody of the child above that provided for in the standard order of visitation. The trial court explained that child support is initially calculated on the standard order of visitation. The court, however, awarded Appellee 56 extra days above the standard order. Thus, the trial court determined it would be unfair to order Appellee to pay child support as if visitation was operating under a standard order.

**{53}** Appellant asserts that such reasoning is improper, citing *Gordon v. Gordon* (Mar. 31, 2000), 7th Dist. No. 97-JE-31. She argues that we have previously found a deviation based on such reasoning to amount to an abuse of discretion. Appellant misreads our *Gordon* decision.

**{54}** In *Gordon*, a mother had been designated the residential parent of her three minor children. The father was granted visitation and was ordered to pay child support. The father's visitation included eight weeks of visitation in the summer. The father requested the trial court to reduce his support obligation while the children resided with him in the summer. Though the trial court did not reduce his obligation outright, it ordered the minor children's mother to reimburse the father half of the payment she received during the summer period. We reversed the trial court's decision stating it "violate[d] the purpose and intent of the statute governing child support." Id. at *3.

**{55}** Appellant claims that *Gordon* forbade the trial court from granting deviations in the child support obligation based on visitation. *Gordon*, however, dealt

with a situation in which a father had been awarded a standard grant of summer visitation, but then did not wish to pay child support during an extended period of that standard visitation. This is prohibited by the child support statutes: "(D) A parent ordered to pay support under a child support order shall continue to pay support under the order, including during seasonal vacation periods, until the order terminates." R.C. 3119.86.

{56} The instant case presents a very different situation than that in *Gordon*. Here, the court was not dealing with a request to adjust child support based on a standard visitation order, but rather, an adjustment pursuant to a visitation order in which Appellee, the non-residential parent and obligor of child support, has custody of the child 56 days more than set forth in a standard visitation order.

{57} R.C. 3119.22 provides that a court may deviate from the standard child support schedule. R.C. 3119.22 reads, in pertinent part:

{58} "*The court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet*, through the line establishing the actual annual obligation, if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, would be unjust or inappropriate and would not be in the best interest of the child." (Emphasis added.)

**{59}** R.C. 3119.22 directs a court to consider the factors enumerated in R.C. 3119.23. Among these factors, a court is instructed to consider:

**{60}** "*Extended parenting time* or extraordinary costs associated with parenting time, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through the line establishing the actual annual obligation, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of parenting time granted by court order." (Emphasis added.) R.C. 3119.23(D).

**{61}** Here, the trial court explained that it modified the child support obligation of Appellee because of the additional visitation time he had been awarded. This decision is clearly permitted by the child support statutes. Appellant has not raised any aspect of the trial court's decision that was unjust, inappropriate or could be found not in the best interest of the child. Neither does Appellant indicate how the court's decision was unreasonable, arbitrary or unconscionable. Since the court was permitted to deviate from the child support worksheet based on the facts and circumstances of this case, and there was no abuse of discretion, Appellant's second assignment of error is overruled.

ASSIGNMENT OF ERROR NO. 3

**{62}** "THE TRIAL COURT ERRED IN ORDERING THAT THE MINOR CHILD'S LAST NAME BE CHANGED TO THAT OF APPELLEE'S LAST NAME."

**{63}** A trial court's decision to change the last name of a minor child is reviewed according to the abuse of discretion standard. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's action was unreasonable, arbitrary or unconscionable. *Blakemore*, supra, at 219, 450 N.E.2d 1140.

**{64}** Appellant argues that the trial court failed to determine the best interests of the child in ordering the child's surname to be changed to Appellee's surname. There are two Ohio Supreme Court decisions that set the framework for reviewing surname changes as part of child custody or parentage actions; *Bobo v. Jewell* (1988), 38 Ohio St.3d 330, 528 N.E.2d 180, and *In re Willhite* (1999), 85 Ohio St.3d 28, 706 N.E.2d 778.

**{65}** "In Ohio, name changes for minors and adults are governed by R.C. 2717.01(A). R.C. 2717.01(B), which governs name changes for minors, provides that '[a]n application for change of name may be made on behalf of a minor by either of the minor's parents * * *. [I]n addition to the notice and proof required pursuant to division (A) of this section, the consent of both living, legal parents of the minor shall be filed, or notice of the hearing shall be given to the parent or parents not consenting * * * .' " Id. at 30, 706 N.E.2d 778.

**{66}** "Further, the standard for deciding whether to permit a name change is 'proof that * * * the facts set forth in the application show reasonable and proper cause for changing the name of the applicant.' " Id., quoting R.C. 2717.01(A). When

the name change involves a minor child, the court must consider the best interests of the child in making its determination. Id. at paragraph one of the syllabus.

{67} To determine whether a change of a child's surname is in that child's best interest, the trial court is to consider the following factors: "the effect of the change on the preservation and development of the child's relationship with each parent; the identification of the child as part of a family unit; the length of time that the child has used a surname; the preference of the child if the child is of sufficient maturity to express a meaningful preference; whether the child's surname is different from the surname of the child's residential parent; the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; parental failure to maintain contact with and support of the child; and any other factor relevant to the child's best interest." Id. at paragraph two of the syllabus, citing *Bobo*, supra, paragraph two of the syllabus.

{68} In *Bobo*, the Ohio Supreme Court warned against giving undue weight to the father's interest because of custom or tradition. "We caution the courts, however, to refrain from defining the best-interest-of-the-child test as purporting to give primary or greater weight to the father's interest in having the child bear the paternal surname. While it may be a custom to name a child after the father, giving greater weight to the father's interest fails to consider that, where the parents have never been married, the mother has at least an equal interest in having the child bear the maternal surname. In these times of parental equality, arguing that the child of unmarried parents should bear the paternal surname based on custom is another

way of arguing that it is permissible to discriminate because the discrimination has endured for many years." Id. at 334, 528 N.E.2d 180.

**{69}** Here, the trial court's decision to change the name of the minor child does not reflect any consideration of the factors listed in *Bobo* and *Willhite*, and makes no mention of the best interests of the child. The judgment entry simply states, "[i]n addition, Child's birth certificate shall read Randy Horton as the father and the child's name shall be changed to reflect same." (10/27/08 J.E., p. 8.) No further discussion regarding the change is present in the entry or appears in the trial transcript. Although there are certain facts that were established at trial that may have entered into the court's consideration, such as the length of time the child used the mother's surname, there is no indication that the trial court actually considered these facts or made any best interests determination. Therefore, Appellant's third assignment of error is sustained and the issue is remanded to the trial court for further consideration.

ASSIGNMENT OF ERROR NO. 4

**{70}** "THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING THE TAX EXEMPTION TO THE NON-CUSTODIAL PARENT IN THE ABSENCE OF ANY EVIDENCE DEMONSTRATING THAT THERE WOULD BE A TAX SAVINGS."

**{71}** Appellant argues that the tax exemption associated with a dependant child is presumptively awarded to the residential parent, and that Appellee did not overcome this presumption and should not have been awarded one-half of the tax exemption. The trial court awarded the exemption to Appellant in odd-numbered

years and to Appellee in even-numbered years. Appellant is correct, and the court should have awarded her the full tax exemption.

**{72}** The Ohio Supreme Court in *Singer v. Dickinson* (1992), 63 Ohio St.3d 408, 415, 588 N.E.2d 806, set forth the presumption that a dependency tax exemption belongs to the residential parent. We have also held that: "the dependency tax exemption may be awarded to the non-residential parent when such allocation would produce a net tax savings for the parents, thereby furthering the best interest of the child. A net tax savings would occur when allocating the dependency tax exemption to the non-residential parent only if said parent's income fell into a higher tax bracket than that of the residential parent." *Smith v. Smith* (Aug. 8, 1997), 7th Dist. No. 94-B-55, at *3.

**{73}** R.C. 3119.82 requires a trial court to designate which parent may claim a child who is subject to a child support order as a dependent for federal tax purposes. If the parents do not agree as to which parent may claim the dependency deduction, "the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children and, with respect to orders the court modifies, reviews, or reconsiders, the payments for child support are substantially current as ordered by the court for the year in which the children will be claimed as dependents. In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances

and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children."

**{74}** Although the parties introduced their tax returns into the record, there is no particular mention of the tax brackets that applied to either party, so the trial court could not have based its decision on the tax brackets of the parties. Obviously there are many other factors that determine a person's final tax liability other than tax bracket, but we have made this factor determinative in awarding the dependency exemption. Because Appellee did not present any evidence regarding this issue, we cannot conclude that he overcome the presumption in favor of awarding the dependency exemption to Appellant.

**{75}** Further, in examining the tax records, the trial court specifically concluded that the "parties equally benefit" from the dependency exemption. (6/3/09 J.E., p. 2.) The court found that Appellant would receive a tax benefit of $1,378 by taking the deduction, and Appellee would receive a benefit of $1,698. The court determined that these amounts "are more equal than not" and the difference did not weigh in favor of either party. Since the trial court concluded that any difference in taxes would be de minimus, the trial court should have relied on the presumption that Appellant, as the residential parent, was entitled to claim the federal tax exemption for a child dependent. Appellant's fourth assignment of error is sustained and the judgment of the trial court reversed on this issue.

## Conclusion

**{76}** Appellant presented four assignments of error for review. Appellant did not establish any abuse of discretion in the trial court's visitation order, or in the adjustment the court made to child support based on its deviation from standard visitation. Appellant did establish two other errors. The trial court failed to determine the best interests of the child in changing the child's surname from Appellant's to Appellee's. The court also improperly awarded part of the federal tax exemption for a child dependent to Appellee when there is a presumption in favor of awarding the exemption to the residential parent, and Appellee did not overcome this presumption. Appellant's first and second assignments of error are overruled. Appellant's third assignment of error is sustained and the case remanded for a redetermination of whether the child's surname should be changed. Appellant's fourth assignment of error is sustained and the judgment of the trial court is modified to reflect that Appellant is awarded the entire child dependency exemption rather than splitting the exemption between the parties.

Donofrio, J., concurs.

DeGenaro, J., concurs.