[Cite as *In re J.H.*, 2011-Ohio-6536.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 10 JE 15 |
| | ) | |
| J.H. | ) | |
| | ) | |
| JASON T. HANLIN | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | OPINION |
| | ) | |
| VS. | ) | |
| | ) | |
| SHAUNA R. PARSONS | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common
                               Pleas, Juvenile Division, of Jefferson
                               County, Ohio
                               Case No. 2005 PA 144

JUDGMENT:                      Affirmed in part.  Reversed in Part.
                               Remanded.

APPEARANCES:
For Plaintiff-Appellee:        Atty. Jane M. Hanlin
                               Bruzzese & Calabria
                               P.O. Box 1506
                               100 N. Fourth Street
                               Steubenville, Ohio  43952

For Defendant-Appellant:       Atty. Amanda J. Banner
                               Banner Law, LLC
                               3685 Stutz Drive, Suite 100
                               Canfield, Ohio  44406

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: December 16, 2011

WAITE, P.J.

**{¶1}** Defendant-Appellant, Shauna Parsons and Plaintiff-Appellee, Jason Hanlin established the parentage and care arrangements for their son J.H. through a paternity suit in the Jefferson County Court of Common Pleas, Juvenile Division in 2005. Since the initial suit was resolved with a paternity determination and a shared parenting agreement, the terms of the original parenting arrangements have been the source of controversy and modified several times. Most recently, the two parties have disagreed over the amount of money spent on school-related expenses and the allocation of the dependant child tax exemption. Appellant filed a contempt motion seeking to compel Appellee to pay for a full share of J.H.'s school needs and for the costs of the action. Appellant also sought to change the agreed year-to-year shifting of the dependant child exemption and instead retain the exemption herself as the residential parent, which is the default arrangement under the law. Although the lower court did not find Appellee in contempt, it did order him to reimburse Appellant for a full half of the claimed school expenses. The court denied Appellant's motion for attorney's fees associated with the cost of the contempt motion, denied her motion to reallocate the tax exemption, and refused to allow her to supplement discovery with a copy of her tax return after the court had ruled on the exemption.

On appeal Appellant seeks attorney's fees for the contempt motion, a reversal of the lower court's ruling on the tax exemption and a reversal of the evidentiary ruling. The lower court's rulings on attorney's fees and evidentiary matters were both within the bounds of discretion. With regard to the dependant child tax exemption, the record failed to establish the tax brackets of the parents, failed to include other necessary information concerning income and tax credits, and failed to demonstrate the trial court's application of controlling law. For these reasons, the lower court's decision is affirmed in part and reversed in part and remanded for further proceedings.

## Factual and Procedural History of the Case

**{¶2}** Appellee, Jason Hanlin and Appellant, Shauna Parsons were involved in a relationship that resulted in the birth of their son, J.H., in 2003. During the first few years of J.H.'s life the three lived together, although Appellee and Appellant were never married. (Tr. p. 53.) The relationship ended at some point during 2005 and a paternity suit was filed. The juvenile court ruled that Appellee was the legal parent of J.H. and adopted the parties' parenting agreement by reference. (11/14/05 J.E.) Although the agreement identified Appellant as the custodian and residential parent of J.H., and gave Appellee visitation rights, a visitation schedule and set an amount for support payments, there were no separate court orders at that time, other than the general language incorporating the agreement specifically ruling on custody and support. Later court orders modified the schedule of visitation, and introduced shared payments for school needs, but did not alter the underlying support agreement reached by the parties in 2005.

**{¶3}** At the end of the paternity proceeding, when the original support agreement was adopted by both parties, Appellant and Appellee were both single, and Appellant was in school studying nursing. Under the terms of the original agreement, Appellant, as the custodial parent, would claim J.H. as a dependant, as she had been since his birth. Commencing with tax year 2007, the parties agreed that Appellee would be allowed to claim J.H. on the odd years and Appellant would claim him on the even years. (11/14/05 J.E.)

**{¶4}** Beginning with a May 25, 2007 "Motion to Enforce or Clarify Parenting Time Schedule" filed by counsel for Appellee, attempts to modify or enforce support orders became increasingly acrimonious. Appellant sought to have Appellee's counsel removed due to a conflict resulting from her involvement with Appellee. Counsel was then engaged to Appellee and is now his wife. The trial court allowed counsel to remain. (8/29/07 J.E.)

**{¶5}** On June 16, 2008 the juvenile court modified the original support agreement, amended the parenting schedule, and required Appellee to pay half of the school-related expenses. With regard to the tax exemption, the entry states: "[t]he Court ruled on the tax dependency issue and the same will remain as previously Ordered[sic]," however, the court did not identify the prior ruling to which it referred. (6/16/08 J.E.) The record contains the original November of 2005 support order allocating the exemption. After the case was re-opened in 2007, the record reflects an April 14, 2008 magistrate's order allocating the 2007 exemption to Appellee, followed by an April 24, 2008 motion by Appellant to set aside the

magistrate's order, and a May 2, 2008 judgment entry denying Appellant's motion to set aside. We note that there is no order of the court adopting the magistrate's April 14, 2008 decision. (Magistrates Order, 4/11/08.) Thus, the only valid order of the court allocating the exemption appears to be the November 14, 2005 support order.

{¶6} In 2008 and 2009 Appellee did not fully reimburse Appellant for half of the school expenses he was ordered to pay in June of 2008. Appellee instead insisted on seeing receipts; when he was provided receipts, he found defects in the receipts provided. Appellee challenged the abbreviated descriptions of the clothing on the receipts, refused to pay for clothing purchases made before August or September, and refused to pay for clothing he thought J.H. had worn before the beginning of the school year. He also objected to paying for items in any receipt if the copier had cut off the transaction date. Rather than pay half of the amounts totaled in the receipts, Appellee calculated his own total, and then sought to discount that total by money he had spent occasionally filling J.H.'s prescriptions and for other incidentals.

{¶7} In December of 2009, having requested payment, provided itemized bills, and provided receipts and copies of receipts, Appellant filed a contempt order alleging Appellee had failed to comply with the June 16, 2008 modification of the parenting agreement. She also filed a motion to reallocate the tax exemption to her solely, because she is the residential parent, because of the benefits to the child the exemption would provide, and due to the change in circumstances caused by Appellee's remarriage. Appellant also suggested that rather than argue with

Appellee each year over the school expenses, she would prefer to have the tax exemption and cover the expenses alone. Appellant accepted a different nursing job in 2009 with a lower rate of pay because the schedule would allow her to work when Appellee is off, rather than at the same time. The flexible schedule places her at work on fewer of her days with J.H. and more of the days when J.H. is with Appellee.

**{¶8}** A hearing on the expense and tax issues was continued several times and finally held on April 8, 2010 before a magistrate. Although Appellant provided her W-2 statements to the court and to opposing counsel in discovery, she had not yet filed her returns when the hearing was conducted, because she was waiting for the court's decision about the exemption. In contrast, Appellee and his wife had filed their return claiming J.H. in addition to two children from the wife's prior marriage. Appellee provided his own W-2 but refused to produce a W-2 and other documents verifying his wife/counsel's various sources of income. Appellee also provided several tax scenarios, with differing data points, on the letterhead of an accounting firm. No testimony was offered by the individual who prepared this information to explain it, nor were the underlying data or calculations included. The magistrate's decision was entered on April 14, 2010. Appellant filed timely objections to the magistrate's decision on May 12, 2010. Over a month after the magistrate entered a decision, on May 24, 2010, Appellant attempted to supplement discovery with her 2009 tax return, however, Appellee filed a motion to strike which was granted by the court. Both the motion to strike and the trial court's decision granting it were filed after the trial court's determinations on the merits.

**{¶9}** The trial court adopted the magistrate's decision and findings in a brief judgment entry on May 26, 2010. The trial court adopted the finding that Appellee was obligated to pay for a full half of the expenses listed by Appellant, an additional $317.04 for both years, but did not find Appellee in contempt or award attorney's fees. The court overruled Appellant's objections to the magistrate's decision in a single sentence, stating "[t]he Motion for Reallocation of the Tax Exemption is OVERRULED and the parties will continue to alternate the tax exemption." The court adopted and incorporated the magistrate's April 14, 2010 decision by reference only. (5/26/10 J.E.) Neither the magistrate's decision nor the trial court's entry included factual findings as to the tax exemption, nor did they identify the basis for the decision. The magistrate had resolved the issue with only a general statement: "[t]he Court does not find that it is in the child's best interests to modify the previous Order of the Court as it pertains to the allocation of the tax exemption." (4/14/10 Magistrate's Decision, p. 2.) Appellant filed a timely notice of appeal of the trial court's decision.

First Assignment of Error

**{¶10}** "The trial court abused its discretion in failing to specify whether the factors of R.C. 3119.82 were applied in its determination that it was not in the best interests of the minor child to allocate the tax exemption solely to the mother/residential parent."

**{¶11}** As Appellee and Appellant were never married, all determinations as to custody and support of the minor child are within the jurisdiction of the juvenile court.

The two initially resolved the custody, support, visitation, child care, and tax exemption issues concerning J.H. in a "shared parenting agreement" adopted by the court on November 14, 2005 at the conclusion of the initial parentage suit. The provisions of the parties' agreement included a requirement that Appellee pay child support and a determination as to visitation with the child. The agreement also provided that Appellant maintained the right to claim J.H. on her tax returns until she graduated from her nursing course. (11/14/05 J.E.) For the most part the parties' agreement mirrored the default requirements under the law, i.e. a biological father is required to provide support, may seek and be granted visitation rights, and the biological mother is the custodial and residential parent. Because the mother is, by law, the custodial and residential parent, she undisputedly would have the right to claim the child or children as dependant on her tax filings. (R.C. 3109.042.) In some respects the agreement of the parties, here, extended or varied the rights and obligations established by law with regard to a child born out of wedlock: restrictions were placed on who could be used for child care if either biological parent was unavailable, and the parties agreed that the right to claim the dependant child tax exemption was to be alternated between them after Appellant completed school (rather than remaining with Appellant). This agreement, and the subsequent alterations to the agreement, stands in lieu of separate support and visitation orders by the court.

{¶12} Since 2007, pursuant to this agreement, Appellant and Appellee have alternated the federal tax exemption for their minor child. Appellant, as the

residential parent, is now seeking to have the exemption allocated solely to her. In rebuttal, Appellee argues that this issue has been raised and settled multiple times by the juvenile court. The number of times the issue has been raised is not relevant to our determination, however; the exemption, like all other issues concerning the care and support of the minor child, is subject to the continuing jurisdiction of the court. Appellee also argues that Appellant is required to make her motion to reallocate the tax exemption in the context of a motion to modify a support order. He argues that there is no support order in the current matter, and that unless Appellant seeks a change in support her motion to reallocate the exemption is not properly before the court. Finally, Appellee posits that Appellant is required to show a change in circumstances before reallocation is appropriate, and that Appellee has met his burden with regard to R.C. 3119.82.

**{¶13}** We review domestic relations and juvenile cases, including those concerning the allocation of the federal tax dependency exemption, under an abuse of discretion standard. *In re Criner* (Aug. 27, 2001), 7th Dist. No. 99 BA 57, 2 (citing *Corple v. Corple* (1997), 123 Ohio App.3d 31, 33.) An abuse of discretion connotes more than an error of law or judgment it implies an attitude that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. Although the modification of a custody decree requires the court to find a change in circumstances and determine that the change is in the best interests of the child, the modification of the terms of a parenting plan or agreement requires only an evaluation of the best interests of the child. *Fisher v. Hasenjager* (2007), 116 Ohio

St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶33 (a plan or agreement is not used by a court to grant parental rights and responsibilities, which can only be done by order or decree. A shared parenting plan or agreement, by contrast, details how the parties are to implement the court's determination of parental rights, and as such is less critical and may be altered as needed in the best interests of the child.) In the context of the allocation of the dependant child tax exemption, we have previously explained that "there is a presumption in favor of granting the dependency exemption to the residential parent * * * the burden is on the nonresidential parent to produce competent and credible evidence to show that allocating the dependency exemption to the nonresidential parent would be in the best interests of the child." *Maessick v. Maessick*, 171 Ohio App.3d. 492, 2006-Ohio-6245, ¶15. We have declined to limit this burden on the nonresidential parent to produce evidence to rebut the presumption in favor of the residential parent even where there is a prior agreement allocating the exemption to the non-residential parent and the residential parent is challenging the allocation for the first time. Id. at ¶15, 24 citing *In re Criner*, supra. Although normally the matter is triggered by some other event, which allows notice to the non-residential parent that the allocation of the exemption is in dispute, no separate trigger issue exists here because Appellant filed a motion specifically seeking reallocation. *Maessick*, ¶31. Additionally, "the statute does not make a distinction between the court's duty in making an initial child support order and a modified order," or, as is the case here, a modification of the original agreement allocating the exemption. R.C. 3119.82, *Maessick,* supra, ¶24 discussing *In re*

*Criner*, supra; *Singer v. Dickinson* (1992), 63 Ohio St.3d 408, 414, 588 N.E.2d 806, 811. Thus, under existing law, where the residential parent seeks to assert the default allocation of the exemption and abandon an agreed variance, the court must choose to either enforce the default (which is presumed to be in the child's best interest) or conduct the relevant analysis as though it were making an initial determination.

{¶14} If the trial court follows the presumption and allocates the exemption to the residential parent, no inquiry into the net benefit is necessary. Where the trial court chooses to allocate the exemption away from the residential parent, or chooses to continue allocating the exemption away from the residential parent, the trial court must "review all pertinent factors, including the parents' gross incomes, the exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state, and local income tax rates." Id. at paragraph two of the syllabus. The court must also follow the procedure described in R.C. 3119.82, which states:

{¶15} "If the parties do not agree, the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children * * * In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with

each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children."

**{¶16}** While net tax savings and eligibility for other credits are only two of the five factors the court must consider, both are often misconstrued by the lower courts, including the court in this instance. As this court has previously explained, the dependant child tax exemption "allows a parent to deduct a fixed dollar amount from his or her gross income for each dependant child claimed on the federal income tax return." *In re Criner,* *1. Tax refunds are not representative of this number, nor are they indicative of the net tax benefit the deduction may provide due to eligibility for other deductions, credits or exemptions which are contingent on the ability to claim an eligible dependent. Tax refunds should not be the basis of a court's net tax benefit analysis. In fact, decisions that rely solely on the amount of the tax refund have been reversed on an abuse of discretion basis. *Cawrse v. DiLallo,* 6th Dist. No.L-06-1329, 2007-Ohio-3684, ¶35.

**{¶17}** We have previously stated that when the lower court considers the net tax benefit to each parent, it must look at the tax brackets of each parent. *Evangalista v. Horton*, 7th Dist. No. 08 MA 244, 2011-Ohio-1472, ¶74-75. While there are a variety of factors that determine a person's tax liability other than the tax bracket, this factor is certainly determinative in awarding the dependency exemption. Id. at ¶74. This factor determines the net benefit of the exemption itself because it sets the value of the exemption to each party. The actual value of the dependant

child exemption is the amount of the exemption in that tax year, multiplied by the rate of taxation paid by the party.

{¶18} The net value of the deduction itself, however, does not determine the total tax benefit under either *Singer* or R.C. 3119.82, because while the net value of the ability to claim the exemption may be greater for the party who has higher income (presuming that the individual with greater income pays tax at a higher rate), the party with the lower income may be eligible for other credits, deductions, or exemptions by virtue of the ability to claim a dependant child. This may result in a greater total tax savings due to that dependant child. For this reason, the lower court's inquiry must include not only the tax brackets of both parents, but also evidence "concerning whether or not the parties have other exemptions or deductions or taxable income, whether each party could file joint income tax return, whether or not either party has income that impacts the relevant federal, state, and local income tax rates" and any tax credits available to the parties both with and without the ability to claim the child as a dependent. *Boose v. Lodge*, 3d Dist. No. 6-03-04, 2003-Ohio-4257, ¶9; see also *Foster v. Foster*, 6th Dist. No. S-03-037, 2004-Ohio-3905, ¶21. Again, these are discrete numbers which may be ascertained by examining the credits, deductions, or exemptions available in the relevant tax year, and this information, in combination with evidence of gross income from all sources, must be provided to the court pursuant to *Singer* and R.C. 3119.82. Tax refunds, projected tax burdens, and estimated quarterly payments, especially those for the following tax year, are not relevant.

{¶19} The amount of a tax refund is the gross result of numerous factors, including whether a party has withheld the proper amount. If a party has over withheld and the lower court fails to make the proper inquiry into the applicable tax rates, gross income, other exemptions, deductions, and credits, the court may erroneously conclude that the party receiving the larger refund would provide the child a greater benefit. This is simply not the case. A party who has properly withheld, and in fact would receive no refund in the relevant year, may nevertheless be the beneficiary of a greater tax benefit by virtue of the exemption. Finally, if the trial court concludes that the benefit to both the residential and the non-residential parent is "about the same," the presumption in favor of the residential parent controls. *Evangelista*, supra, ¶75. Again, the tax benefits of the exemptions are not the only factors to consider; the relative income of the parents, the greater impact of tax savings on the spending ability of the parent with a lower income, and the best interests of the child must also be evaluated under the applicable statutes and caselaw.

{¶20} The trial court has discretion to include or to exclude the income of a new spouse when recalculating child support or when calculating the net benefit of a tax exemption. *Lazenby v. Bunkers*, 6th Dist. No. WD-09-046, 2010-Ohio-3075, ¶14; *Hutchinson v. Hutchinson* (1993), 85 Ohio App.3d 173, 177-178, 619 N.E.2d 466. The allocation of the tax benefit is intended to enhance the monetary support available for the child. Logically then, only the income considered in the support determination or the income providing support should drive the net benefit analysis.

Appellant did not seek to have support recalculated based on Appellee's change in circumstances, but such a request is contemplated by the statute and may be appropriate if Appellee's evidence of net benefit is contingent on his wife's income.

{¶21} The deficiencies in the underlying determination in this instance are two-fold; first, the information in the record is not responsive to the relevant tax inquiry, and second, the trial court's summary adoption of the magistrate's decision fails to specify what factors, and the information relevant to those factors, the trial court considered when reaching its decision. The net tax benefit is only one of the five factors for the court to consider under the statute when making its determination and is not dispositive. However, it is the sole factor the lower court appears to have relied on in making its determination, here. Based on the information in the record before us, that reliance appears unfounded. The actual net tax benefit that can be ascertained from this record weighs in favor of Appellant, as does the fact that she is the residential parent, has significantly lower income, and appears to be primarily responsible for the purchasing decisions for J.H. These facts coupled with the reality that Appellee has demonstrated himself to be reluctant to contribute his half of the school expenses for two years running, and has attempted to avoid portions of his contribution by trying to "set off" his portion of expenses against the deductible for health care expenses Appellant is obligated to cover, suggests a reluctance to provide financially for J.H. Appellee's reticence is illustrated by the fact that while he was refusing to pay his half of the school-related expenses he had obtained a 2007 tax refund, yet refused to use it to pay for these expenses for J.H.

**{¶22}** On remand, the trial court needs to be mindful "that removing an exemption from a residential parent equally decreases that parent's ability to support the child and, therefore, adversely affects the best interest of the child residing with that parent." *Hurchanik v. Hurchanik* (1996), 110 Ohio App.3d 628, 632, 674 N.E.2d 1260 citing *Singer*. Despite Appellee's testimony as to his household income and the tax benefits to his wife, mostly provided by leading questioning, the only clear testimony from Appellee is that his solo income is "very similar" to Appellant's. (Tr., p. 70.) Where the parents of the child in question make similar amounts the preference for the residential parent decides the question, unless there are other factors that demonstrate the greatest benefit to the child would accrue against that preference. *Evangalista*, supra, at ¶14-15. Although there is testimony that J.H.'s parents actually make almost the same amount, and would on their own fall into the same bracket, triggering the presumption in favor of the residential parent, the trial court instead appears to have reversed the burden to prove a benefit. Rather than adhere to the presumption in juvenile court matters that it is in the child's best interest to allocate the exemption to the residential parent, the court instead has given preference to the claims of the non-residential parent and inverted the normal burden.

**{¶23}** We also note that the relevant pieces of information concerning net tax benefit do not appear in the record, the transcript of the hearing or the exhibits. The order adopting the magistrate's decision is devoid of a discussion of the R.C. 3119.82 factors. Any order changing the presumption from the custodial parent must follow

R.C. 3119.82 and contain an enumeration of the relevant factors. A record where "[t]he only analysis of and justification for the division of the tax dependency exemption * * * is the blanket statement that it was found to 'be in the best interests of the child'" is insufficient. *In re Marriage of Henson*, 11th Dist. No. 2006-T-0065, 2007-Ohio-4376, ¶46. Appellant's first assignment of error has merit and is sustained. This matter is remanded to the trial court for an allocation of the dependant child tax exemption that complies with *Singer* and R.C. 3119.82.

Second Assignment of Error

**{¶24}** "The lower court abused its discretion in failing to award reasonable attorney's fees and costs on mother's contempt motion."

Third Assignment of Error

**{¶25}** "The lower court abused its discretion in striking mother's supplemental response to father's discovery requests, based upon her continuing duty to supplement."

**{¶26}** Appellant argues that although the trial court did not find Appellee in contempt, because the court did determine that he failed to meet his support obligation, it abused its discretion in failing to award attorney's fees. Appellant also argues that the court erred in striking her tax return which was filed as a supplement to discovery. The trial court's denial of a motion for attorney's fees and decision to grant a motion to strike are both reviewed under the same abuse of discretion standard and the two will be considered together. A court abuses its discretion when

it makes a decision that is unreasonable, arbitrary or unconscionable. *Blakemore*, supra.

**{¶27}** "Civil contempt utilizes a sanction which is imposed to coerce the contemnor to comply with the court's order. Under civil contempt, prison sentences are conditional, i.e., the contemnor is imprisoned until he obeys the court order. [']If sanctions are primarily designed to benefit the complainant through remedial or coercive means, then the contempt proceeding is civil.['] It is undisputed the contempt in the instant action is civil. Punishment imposed on an adjudication of civil contempt must afford the contemnor an opportunity to purge himself of contempt. [']The contemnor is said to carry the keys of his prison in his own pocket * * * since he will be freed if he agrees to do as so ordered.[']" *Bagnola v. Bagnola*, 5th Dist. App. No. 2004CA00151, 2004-Ohio-7286, ¶39 citing *Bishop v. Bishop* (April 15, 2002), Stark App. No. 2001CA00319, 2002-Ohio-1861. A court may, therefore, order fees in order to purge contempt. Here the court found no contempt, therefore no penalty was necessary. The court's decision that no attorney's fees were merited in a suit where father's noncompliance was not found to be willful is within its discretion.

**{¶28}** Similarly, a trial court has the authority, after entry of a divorce decree, to order the divorced husband to pay his former wife a reasonable amount for attorney's fees incurred in post-decree modification proceedings relative to the support or custody of the minor children of the marriage. *Cohen v. Cohen* (1983), 8 Ohio App.3d 109, 8 OBR 143, 456 N.E.2d 581, at paragraph one of the syllabus, cited by *Hughes v. Hughes* (1991), 72 Ohio App.3d 286, 292, 594 N.E.2d 653, 657.

Although the parties were not married, the same principle applies to the support agreement at issue, here. "That discretion, however, is not without limit. Wary of the ramifications of establishing an absolute rule that a husband pay attorney fees incurred by a wife at any stage of a divorce proceeding, the courts have required that the demand be reasonable, within reasonable limits, or necessary in view of the circumstances." *Cohen* at 111. The fact that a court *may* award reasonable fees is not a requirement that the court *must* award fees. The magistrate's decision suggested that Appellant could have made further attempts to resolve the disagreement about the school expenses, short of litigation. Although it is unclear what steps the court would prescribe in the face of Appellee's refusal to pay, beyond those Appellant took (discussing a budget, itemizing the expenses, providing the receipts, and asking Appellee for half), it is nevertheless within the discretion of the court to decide that attorney's fees were not merited in this instance. We may not substitute our judgment for that of a trial court acting within the bounds of discretion.

{¶29} Accordingly, Appellant's second assignment of error is without merit and is overruled.

{¶30} Similarly, Appellant's tax returns were filed long after the magistrate had rendered its decision and after Appellant filed her objections to that decision. Under the circumstances, the records may not even have reached the trial court by the time it issued its final appealable order two days later and the records may no longer have been relevant by that time. "The determination of a motion to strike is vested within the broad discretion of the court." *State ex rel. Morgan v. New Lexington,* 112 Ohio

St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶26. The court's decision to strike the records that were no longer relevant was within its discretion. On remand of this issue, of course, these records will be properly before the court. Appellant's third assignment of error is without merit and is overruled.

### Conclusion

**{¶31}** The trial court failed to apply the presumption in favor of the residential parent and failed to base its decision as to the allocation of the credit on the gross income of the parents, relative tax brackets, and credits. The record is also incomplete as to the court's analysis and the basis for its decision. Accordingly, Appellant's first assignment of error is sustained and the matter remanded to the trial court for the application of the relevant law and an enumeration of the factors. The court's rulings concerning attorney's fees and evidence were within the court's discretion and are affirmed.

Vukovich, J., concurs.

DeGenaro, J., concurs.