[Cite as *In re B.S.*, 2013-Ohio-1976.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: B.S.
      S.S.

C.A. No.     26368

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 09-10-833
                 DN 09-10-834

DECISION AND JOURNAL ENTRY

Dated: May 15, 2013

BELFANCE, Judge.

{¶1} Rebecca Saunders ("Mother") appeals from the decision of the Summit County Court of Common Pleas, Juvenile Division, which overruled Mother's objections to the magistrate's decision. For the reasons set forth below, we affirm in part and reverse in part.

I.

{¶2} Mother and Michael Saunders ("Father") were divorced in Florida. Father was in arrears on his child support payments ordered by the Florida court. At the time this matter was initiated, Mother lived in Ohio with their two children, B.S., born March 22, 2000, and S.S., born April 8, 1998. This matter began when a complaint was filed asserting that B.S. and S.S. were abused, neglected, dependent, and endangered. Father moved to Ohio and ultimately received temporary custody of the children.

{¶3} In 2011, Mother and Father entered into a shared parenting plan. A hearing to determine the issues of child support and tax exemptions was held before a magistrate on July

12, 2011. The magistrate issued a decision finding that a deviation from the child support guidelines was warranted and concluded that Father would owe Mother no child support. The magistrate concluded that Father would pay Mother $155 per month towards satisfying the Florida child support arrears. In addition, the magistrate found that, when the children were not covered by private health insurance, Father would pay $139 per month in cash medical support. The trial court adopted the magistrate's decision and entered judgment accordingly. Mother filed objections to the magistrate's decision and a hearing was held. Subsequently, the trial court overruled Mother's objections. Mother has appealed, raising five assignments of error for our review.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED FATHER'S INCOME FOR CHILD SUPPORT PURPOSES AND CREDITED FATHER WITH UNDOCUMENTED CHILD CARE EXPENSES.

{¶4} Mother asserts in her first assignment of error that the trial court erred in determining Father's income for child support purposes and in crediting Father with undocumented child care expenses. We agree in part.

{¶5} Generally, "[w]hen reviewing an appeal from the trial court's ruling on objections to a magistrate's decision, this Court must determine whether the trial court abused its discretion in reaching its decision." *Daniels v. O'Dell*, 9th Dist. No. 24873, 2010–Ohio–1341, ¶ 10. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. No. 08CA0049–M, 2009–Ohio–3139, ¶ 18.

{¶6} "It is well established that a trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing

of an abuse of discretion." *Pauly v. Pauly,* 80 Ohio St.3d 386, 390 (1997). "Whether a court is establishing an initial child support order or whether the court is modifying an order based on agreement between parties that does not include any order for the payment of child support, the court must apply the Child Support Guidelines as required by the standards set out in *Marker v. Grimm*[], 65 Ohio St.3d 139 [(1992)][.]" *DePalmo v. DePalmo,* 78 Ohio St.3d 535 (1997), paragraph one of the syllabus. *Marker* provides that "[a] child support computation worksheet, required to be used by a trial court in calculating the amount of an obligor's child support obligation * * * must actually be completed and made a part of the trial court's record." *Id.* at paragraph one of the syllabus.

> A court that issues a shared parenting order in accordance with section 3109.04 of the Revised Code shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in section 3119.022 of the Revised Code, through the line establishing the actual annual obligation, except that, if that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount.

R.C. 3119.24(A)(1).

{¶7} "[T]he amount determined under the Child Support Guidelines [i]s rebuttably presumed to be the correct amount of child support due[.]" (Internal quotations and citations omitted.) *DePalmo*, 78 Ohio St.3d at 538; *see also* R.C. 3119.03.

{¶8} In filling out the child support worksheet in the instant matter, the magistrate determined that Father's income was $45,968.00. The trial court adopted the magistrate's findings. Mother maintained that, based on Father's pay stubs from January 2011 to the beginning of July 2011, Father's annual income would be between $53,000 and $54,000 instead.

While we do not think the record supports Mother's assertion, we do think the trial court erred in calculating Father's income.

{¶9} The magistrate noted that Father testified to an hourly rate of $17 and that he averaged 52 hours per week. The magistrate utilized this information to calculate Father's yearly income at $45,968 per year. The magistrate noted that Father testified that his hours were less in the winter and could be up to 57 hours per week. The magistrate essentially concluded that the evidence supported Father's testimony. The magistrate based this conclusion on the fact that the income figure on Father's 2010 W-2, which represented income from approximately the last 7 months of 2010, if extrapolated would be approximately equivalent to Father averaging 52 hours a week at $17 per hour, or approximately $46,000 per year. While this is true, in light of Father's testimony that his work hours varied from week to week and season to season, using the last seven months of the year as the basis for the entire year's wages would inherently be flawed due to the variation of Father's work hours. To obtain an accurate picture of Father's income, and in order to determine if Father's testimony is supported by the documentary evidence, one would have to examine a calendar years' worth of wages. Both the magistrate's and Mother's calculations fail to do this. The magistrate's calculation, which is on the low side, is an extrapolation based upon the end of a year, while Mother's calculation, which is on the high side, is an extrapolation based upon income from the first part of a year. An accurate income figure would appear to lie somewhere in between the two figures. Overall, Father's assertion that that he averaged only 52 hours per week, and thus only made approximately $46,000 per year, does not appear credible in light of the evidentiary material discussed and presented at the hearing. Instead, it appears that, based upon the evidentiary materials, that Father would have had to average more than 52 hours per week in light of the fact that his yearly income, based upon an

actual calendar year, would be somewhere between $46,000 and $54,000. Therefore, the magistrate's reliance on this testimony to calculate Father's income and the trial court's adoption of the magistrate's finding is also misplaced. Accordingly, the matter is remanded so that an accurate income figure for Father can be determined.

{¶10} Mother next asserts that the trial court erred in adopting the magistrate's finding that Father had child care expenses in the amount of $5200 per year when those expenses were not documented. We note that Father asserted in his testimony that he spent $250 per week on child care. The magistrate noted that "Father provided no documentation of these payments, but [M]other conceded that [F]ather had child care costs." In calculating the child care costs, the magistrate utilized a figure of $100 per week which Mother argued at the hearing was a reasonable figure. The magistrate used the amount of $100 per week, or a total of $5200 per year. At the hearing, Mother's counsel asserted that she "would ask that we find the credit be given to him in the neighborhood of about a hundred dollars a week rather than the $250 a week." Given Mother's counsel's concession at the hearing, and the magistrate's compliance with Mother's counsel's request, we cannot say that the trial court abused its discretion in overruling Mother's objection on this issue. Essentially, Mother's counsel's statement amounted to a stipulation, and Mother has not provided any authority that the magistrate and trial court could not rely on that stipulation. Accordingly, we conclude Mother's argument is without merit.

{¶11} Additionally, we note that we are troubled by the trial court's child support worksheet. Numerous categories that would be applicable to the instant matter have been left blank. For example, this Court has a difficult time understanding how the trial court came up with the actual annual obligation. Section 26 of the worksheet is the portion which determines

the actual annual obligation when health insurance is not provided. Both lines 26a and 26b have been left blank. However, line 26c, which is supposed to represent the difference between 26b and 26a, and the actual annual obligation, is completed with a figure of $1859. Completing all of the applicable categories minimizes the chances of an error in the overall annual child support obligation and aids review of the trial court's child support award. *Marker* insists that a child support worksheet be *completed. Marker*, 65 Ohio St.3d at paragraph one of the syllabus. While the worksheet at issue is part of the record, it has not been completed. *See In re Jamieson v. Jamieson,* 11th Dist. No. 95-T-5321, 1996 WL 702470, *3 (finding reversible error when a worksheet was in the record, but only a few of the items were completed); *see also Brown v. Brown,* 9th Dist. No. 201077, 2001 WL 324391, * 2-3 (Apr. 4, 2001); *In re Day,* 7th Dist. No. 01 BA 28, 2003-Ohio-1215, ¶ 27. Accordingly, we also remand the matter so the trial court can complete a child support worksheet and include it in the record.

ASSIGNMENT OF ERROR II

> THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DID NOT ALLOW THE PARTIES TO PRESENT EVIDENCE AS TO THE TIME SHARE OUTLINED IN THE SHARED PARENTING PLAN FOR DEVIATION PURPOSES, THEN MADE A DETERMINATION BASED UPON FATHER'S INTERPRETATION OF THE TIME SHARE IN HIS WRITTEN CLOSING, WHICH WAS NOT BASED UPON REAL TIME SPENT.

{¶12} Mother asserts in her second assignment of error that the trial court erred in failing to allow the parties to present testimony about how much time they actually spend with the children under the shared parenting plan. Mother seems to assert that, if the testimony was allowed, it would be evident that all of Father's time with the children is not time that Father is actually home with the children and the actual parenting time split is closer to a 50/50 split. In

addition, Mother asserts that the trial court's reliance on the magistrate's calculation was not supported by the evidence.

{¶13} We note that the calculation of time the children spend with each parent would relate to whether or not it was appropriate to deviate from the child support worksheet calculation. *See* R.C. 3119.24(A), (B)(1); R.C. 3119.23(D). As the child support worksheet is incomplete and Father's income needs to be recalculated, whether deviation is appropriate will also need to be reevaluated. Thus, it appears that issues related to deviation are not ripe for review at this time. Further, we cannot evaluate whether Mother was prejudiced by the exclusion of the testimony, as we cannot know whether the trial court will deviate from the child support award when it recalculates the amount. *See* Civ.R. 61.

{¶14} Nonetheless, we note that it does not appear that Mother took issue at the magistrate's hearing with the magistrate disallowing the testimony that Mother now asserts should have been admitted. When Mother's counsel began to question Father about parenting time, the magistrate asked Mother's counsel whether such testimony was relevant "when [the magistrate] [had] the shared parenting agreement [and thus had] the hours written down[.]" Mother's counsel replied that it was not, aside from the fact that the time split was not 60/40. The magistrate then stated that she would do the analysis based on the time as set forth in the shared parenting plan. Mother's counsel did not follow up with any other argument as to why the testimony was necessary.

{¶15} Additionally, we note that the shared parenting plan was signed by the parties on July 11, 2011, and was set to take effect on July 14, 2011. Thus, it would appear that, at the time of the magistrate's hearing on July 12, 2011, the parties did not have a chance to put the plan into action. Accordingly, it would seem that the testimony Mother asserts should have been

admissible would be merely speculative. For example, at the time of the hearing, Mother could not know how often she would actually be able to exercise her first right of refusal when Father was unable to care for the children.

{¶16} To the extent Mother is arguing that the magistrate's calculation of parenting time as it relates to propriety of a deviation, and the trial court's adoption of it, was an abuse of discretion, we conclude this argument is not properly before us in light of our resolution of Mother's first assignment of error. As the trial court must recalculate the child support award, it will also have to reconsider the validity of a deviation and the factors implicated therein. Mother's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT COMPUTED CHILD SUPPORT AND FAILED TO APPLY THE DEVIATION FACTORS IN R.C. []3119.23 BASED UPON THE ACTUAL EVIDENCE PRESENTED IN THE CASE.

{¶17} Mother asserts in her third assignment of error that the trial court abused its discretion in ordering a downward deviation to zero in Father's child support obligation. In light of our resolution of Mother's first assignment of error, we do not reach the merits of Mother's argument. The trial court is already required to complete a new child support worksheet, which will determine an amount due that is presumptively correct. *See* R.C. 3119.03. If the trial court determines that the actual annual obligation "would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount." R.C. 3119.24(A)(1). Accordingly, we decline to address Mother's third assignment of error.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT TOOK MOTHER'S ENTITLEMENT TO FLORIDA CHILD SUPPORT ARREARS FROM FATHER IN THE AMOUNT OF $150.00 PER MONTH INTO CONSIDERATION AS A BASIS FOR DENYING HER CHILD SUPPORT.

{¶18} Mother asserts in her fourth assignment of error that the trial court erred in taking into account Father's child support arrears in determining that a downward deviation to zero was appropriate.

{¶19} Assuming that the trial court did consider the arrears as a basis for the downward deviation to zero, a review of that issue is not before us in light of our resolution of Mother's first assignment of error. After recalculating the child support award, the trial court can then determine the appropriateness of a deviation based upon on the statutory factors referred to in R.C. 3119.24. Accordingly, we decline to address Mother's fourth assignment of error.

ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO FOLLOW THE REQUISITE GUIDELINES FOR AWARDING MOTHER THE TAX EXEMPTION OF THE CHILDREN AND DID NOT ALLOW HER TO CLAIM EVEN ONE OF THE CHILDREN.

{¶20} Mother asserts in her fifth assignment of error that the trial court erred in awarding the tax exemptions for both children to Father. We agree.

{¶21} "The allocation of tax exemptions between parents will not be disturbed absent an abuse of discretion." (Internal quotations and citations omitted.) *Lawrence v. McCraw*, 9th Dist. No. 10CA0079-M, 2011–Ohio–6334, ¶ 14. R.C. 3119.82 provides:

Whenever a court issues, or whenever it modifies, reviews, or otherwise reconsiders a court child support order, it shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes as set forth in section 151 of the "Internal Revenue Code of 1986," 100 Stat. 2085, 26 U.S.C. 1, as amended. If the parties agree on which parent should claim the children as dependents, the court shall designate

that parent as the parent who may claim the children. If the parties do not agree, the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children and, with respect to orders the court modifies, reviews, or reconsiders, the payments for child support are substantially current as ordered by the court for the year in which the children will be claimed as dependents. In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.

{¶22} "[U]nder a shared parenting arrangement both parties are, in essence, deemed to be the residential parent, thus the presumption [that the residential parent is entitled to the tax exemption] would not apply." *Hall v. Hall,* 3rd Dist. No. 6-10-01, 2010-Ohio-4818, ¶ 49. "Therefore, the trial court is essentially left to allocate the tax dependency exemption focusing on what is in the best interest of the children, which includes any net tax savings for either of the parents." *Id.; see also Rainey v. Rainey,* 12th Dist. No. CA2010-10-083, 2011-Ohio-4343, ¶ 40. The factors appropriate for consideration are listed in the statute: "[N]et tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor * * *." R.C. 3119.82; *see also Ankney v. Bonos,* 9th Dist. No. 23178, 2006-Ohio-6009, ¶ 40, *overruled in part on other grounds*, *Gunderman v. Gunderman,* 9th Dist. No. 08CA0067-M, 2009-Ohio-3787, ¶ 13. "Net tax savings 'occur through allocation to the noncustodial parent only if the noncustodial parent's taxable income falls into a higher tax bracket than the tax bracket of the custodial parent.'" *Jacobs v. Jacobs,* 9th Dist. No. 12CA0019, 2012-Ohio-5815, ¶ 4, quoting *Singer v. Dickinson*, 63 Ohio St.3d 408, 415 (1992). "If both parents' incomes are taxed in the same tax bracket, no

net savings are realized by allocating the exemption to the noncustodial parent." *Singer* at 416; *see also In re J.H.,* 7th Dist. No. 10 JE 15, 2011-Ohio-6536, ¶ 17 (noting that examining the tax bracket of the parents determines the net benefit of the exemption because it sets the value of the exemption to each party). "In determining whether taxes would be saved by allocating the federal tax dependency exemption * * *, a court should review all pertinent factors, including the parents' gross incomes, the exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state, and local income tax rates." *Id*. "While the trial court does not need to state a basis for allocating the exemption, the record does need to include financial data in relation to the above factors to support the trial court's decision." (Internal quotations and citation omitted.) *Jacobs* at ¶ 4.

**{¶23}** In the instant matter, the parties agreed in their shared parenting plan that they would allow the trial court to decide the matter of the tax exemptions. The magistrate found that

> [t]here was insufficient evidence presented to show that either parent would have greater tax savings, earned income tax credit or other tax credits. Both asserted that they would receive more benefit – [F]ather because he's in a higher tax bracket; [M]other because she is in a lower tax bracket and has received the earned income credit in the past – but there was no evidence to show that these assertions would actually occur. And if they were to occur, the magistrate is without sufficient evidence to know whether they would offset one another.

**{¶24}** The trial court adopted the magistrate's decision and overruled Mother's objections on the issue. In awarding the exemptions the magistrate and trial court did so on the basis of the fact that Father has direct care of the children "50% more" than Mother, Mother's income has the potential to go unreported, and Mother's "job status is more tenuous[.]" Thus, it appears the magistrate and the trial court were focused primarily on the *possibility* of Mother having unreported income or of not having a job, as opposed to the facts and evidence of Mother's current situation. While it is clear that the magistrate and trial court found that there

was insufficient evidence to determine which parent would receive the greater tax benefit from claiming the exemptions, the remedy for such a problem was to require the parties to supply information necessary so that appropriate consideration of the relevant factors could occur. It is true that this Court has stated that, "[i]n the absence of evidence showing that the nonresidential parent would receive a net tax savings from the dependency exemption, the court must employ the presumption that the dependency exemption belongs to the residential parent." (Internal quotations and citation omitted.) *Dunlap v. Dunlap,* 9th Dist. No. 23860, 2008-Ohio-3201, ¶ 13. Nonetheless, it is unclear how this presumption would apply in this case as both parents are residential parents. Thus, given the lack of a presumption as to who should receive the exemption under the facts of this case, information relevant to the factors is vitally important to resolve the matter.

{¶25} We reiterate that *all* of the relevant factors need to be taken into consideration. *See* R.C. 3119.82; *Singer,* 63 Ohio St.3d at 416. This would include any case-specific additional factor, such as whether either parent is in arrears on child support. *See* R.C. 3119.82 (stating that "the court shall consider, in making its determination, * * * any other relevant factor concerning the best interest of the children[]"); *see also Flynn v. Sender,* 8th Dist. No. 84406, 2004-Ohio-6283, ¶ 34. It does not appear that the magistrate or trial court considered the fact that Father was significantly in arrears on the Florida child support award; a fact that would not favor Father receiving the exemption.[1] *See Flynn* at ¶ 34.

---

[1] We note that R.C. 3119.82 states that "the court * * * may permit the parent who is not the residential parent and legal custodian to claim the children as dependents * * * only if the court determines that this furthers the best interest of the children and, with respect to orders the court modifies, reviews, or reconsiders, the payments for child support are substantially current as ordered by the court for the year in which the children will be claimed as dependents." It is unclear how this language would apply in the context of these facts, given that both parents are the residential parent. Thus, it would not seem that the statute would *bar* a residential parent in

**{¶26}** In light of the fact that both the magistrate and trial court found the information related to the parties' financial and tax matters to be insufficient to determine the net tax benefit of the exemption, and the fact that it appears that the magistrate and trial court failed to take into account the fact Father was significantly in arrears, we sustain Mother's fifth assignment of error. The matter is remanded so that the trial court can receive evidence which would allow it to fully evaluate the issue and consider *all* of the above listed factors. *See Lawrence,* 2011-Ohio-6334, at ¶ 15; *Ankney,* 2006-Ohio-6009, at ¶ 42.

### III.

**{¶27}** In light of the foregoing, we sustain portions of the Mother's first assignment of error and Mother's fifth assignment of error. The remaining arguments are either overruled or are not properly before us. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed in part and reversed in part. The matter is remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

---

arrears from receiving the exemption. Nonetheless, the wording of the statute does indicate that the presence of arrears should at the very least be a factor weighing against the award of an exemption.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

 

 

EVE V. BELFANCE
FOR THE COURT

 

MOORE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

KANI HARVEY HIGHTOWER, Attorney at Law, for Appellant.

GREGORY PRICE, Attorney at Law, for Appellee.

CHELSEA BOLLIN, Assistant Prosecuting Attorney, for Appellee.