[Cite as *King v. King*, 2021-Ohio-2970.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Kyle King

    Appellant

v.

Jenae King

    Appellee

Court of Appeals No. WD-20-087

Trial Court No. 2018-DR-0056

**DECISION AND JUDGMENT**

Decided: August 27, 2021

* * * * *

Karin L. Coble, for appellant.

Heather L. Pentycofe, for appellee.

* * * * *

**MAYLE, J.**

{¶ 1} Plaintiff-appellant, Kyle King, appeals the December 2, 2020 judgment of the Wood County Court of Common Pleas, Domestic Division, denying his motion for shared parenting, his motion to reallocate parental rights and responsibilities, and his

motion for contempt, and granting the motions of defendant-appellee, Jenae King, for contempt and to modify parenting time, child support, and tax exemptions. For the following reasons, we affirm the trial court judgment. However, we remand this matter to the trial court to correct multiple errors and inconsistencies discovered during our review of this appeal.

## I. Background

{¶ 2} Kyle King and Jenae King are the parents of B.K. (born in 2008) and L.K. (born in 2011). Kyle and Jenae were granted a divorce in a judgment entered on March 1, 2019. The judgment incorporated stipulations that the parties reached concerning custody of the children: Jenae was designated the children's residential parent, Kyle was awarded parenting time under a two-day/two-day/three-day arrangement; exchanges of the children would occur curbside with Kyle and Jenae to remain in their vehicles during drop-offs and pick-ups; the court's local rules would apply to the division of holidays and days of special meaning; and Kyle and Jenae would engage in post-divorce adjustment counseling.

{¶ 3} The parties' property and debts were also divided, some by stipulation and some by court judgment. As part of this division, Kyle would remain in the marital home. Jenae would get the parties' pool table and chicken coop, and Jenae would pay Kyle his portion of the equity in the chicken coop, which the parties agreed was $550. These large items needed to be retrieved from the marital home at Jenae's expense. The

2.

chicken coop, per the judgment entry, was required to be removed within 30 days of the March 1, 2019 judgment. The pool table, per agreement, was to be removed by March 30, 2019. Kyle was awarded a Honda four-wheeler and stock trailer that the parties owned together, and Jenae was awarded half the equity attributable to those items— $1,035. The parties were ordered to make their respective equity payments within 30 days of the court's judgment.

{¶ 4} The judgment provided that Kyle would claim B.K. on his taxes and Jenae would claim L.K. Kyle was obligated to pay monthly child support of $204.19; this amount included a deviation from the guidelines to account for the fact that Kyle and Jenae had close to equal parenting time. Kyle and Jenae were both ordered to "take all action necessary to determine if private health insurance coverage for the child[ren] is available to them, through their employment or otherwise."

{¶ 5} Not long after the judgment of divorce was entered, Jenae filed a motion to modify parenting time, child support, and tax exemptions, and a motion to show cause why Kyle should not be found in contempt. Among other things, Jenae's motions alleged that Kyle had not paid her the $1,035 owed for the four-wheeler and trailer; Kyle refused to allow her to remove the pool table from his home because she failed to do so within 30 days of the March 1, 2019 judgment; and Kyle refused to allow movers onto his property to remove the chicken coop and refused to disconnect the electricity to the coop.

3.

{¶ 6} Kyle also filed a motion to show cause why Jenae should not be found in contempt, a motion to reallocate parental rights and responsibilities, and a motion for shared parenting. Among other things, Kyle's motions alleged that changes in circumstances weighed in favor of reallocating parental rights and responsibilities, including a shared parenting plan; Jenae failed to follow the local parenting plan and companionship schedule for holidays and days of special meaning; Jenae failed to utilize the procedure for curbside exchanges of the children; Jenae improperly claimed a tax exemption for B.K. on her 2018 taxes; and Jenae failed to pay Kyle $550 for his share of equity in the chicken coop, which she failed to remove within 30 days of the trial court judgment.

{¶ 7} A magistrate conducted a hearing on those motions and issued a decision with findings of fact and conclusions of law. The magistrate denied Kyle's motion for shared parenting, reasoning that the parties' inability to communicate and cooperate would render the arrangement unsuccessful. She also concluded that there had been no change in circumstances that would warrant a change of custody or parenting time. Kyle's child support obligation was increased to $224.11 per month (plus administrative fees), and $33.25 toward medical support. The magistrate granted Jenae 60 days to remove the pool table and chicken coop from Kyle's property. She awarded tax exemptions and credits for both children to Jenae, but also ordered that she provide health insurance for the children. She found Kyle in contempt for failing to pay Jenae $1,035,

4.

and she ordered Kyle to pay Jenae attorney fees of $500. Finally, the magistrate clarified some ambiguities in the court's previous order that had led to conflict with respect to summer parenting time, application of the local parenting schedule, school holidays, and communication outside Our Family Wizard.

{¶ 8} The parties filed objections to the magistrate's decision. After considering those objections, the court approved and adopted the magistrate's decision in its entirety. Kyle appealed. He assigns the following errors for our review:

> Assignment of Error No. 1: The trial court erred in finding appellant in contempt and in denying appellant's show cause motion and the attorney fee award was contrary to law.

> Assignment of Error No. 2: The trial court should have found a change in circumstances and granted appellant's motion for shared parenting.

> Assignment of Error No. 3: The trial court lacked authority to reallocate marital property from the original judgment entry, on a post-judgment motion to modify/show cause motion.

> Assignment of Error No. 4: The trial court reallocated the tax exemption despite ample evidence showing that appellee was not providing health insurance and that, in addition to child support, appellant pays for half of the children's expenses.

Assignment of Error No. 5: The trial court erred in modifying child support by changing the offset from 50% to 30%.

Assignment of Error No. 6: The trial court erred in not including in its order a provision that appellant provide health insurance.

## II. Law and Analysis

{¶ 9} Kyle argues in his first assignment of error that the trial court erred in denying his motion for contempt, granting Jenae's motion for contempt, and awarding attorney fees to Jenae. In his second assignment of error, Kyle argues that the trial court erred in denying his motion for shared parenting and in concluding that there had been no change in circumstances to warrant reallocating parenting time. In his third assignment of error, Kyle argues that the trial court lacked the authority to reallocate the division of marital property. In his fourth assignment of error he argues that the trial court erred in granting Jenae the tax exemptions for both of the children. In his fifth assignment of error, he argues that the trial court erred in decreasing his child-support deviation from 50 percent to 30 percent. And in his sixth assignment of error, he argues that the trial court erred when it failed to order that he provide health insurance for the children.

{¶ 10} For ease of discussion, we address Kyle's assignments of error out of order.

## A. Contempt and Attorney Fees

{¶ 11} In his first assignment of error, Kyle argues that the trial court erred in finding him in contempt and in ordering him to pay Jenae $500 in attorneys fees. He also

6.

argues that the court erred in denying his motion for contempt because Jenae admitted to conduct constituting contempt. Kyle points out—and Jenae agrees—that there is an inconsistency in the trial court's March 1, 2019 judgment that requires clarification. We agree and we address this inconsistency before addressing the arguments in support of Kyle's assignment of error.

### 1. Inconsistency in the Judgment

{¶ 12} The trial court judgment indicates that "Plaintiff and Defendant's Show Cause motions are denied." Nevertheless, the judgment goes on to state that "Plaintiff is found in contempt for non-payment of $1,035," and orders Kyle to pay Jenae $500 in attorney fees "for the contempt findings." It sentences Kyle to five days in the Wood County Justice Center, but suspends that sentence "so long as [Kyle] purges himself of contempt by paying" Jenae $1,035 within 10 days.

{¶ 13} Given that the judgment specifically finds Kyle in contempt, awards attorney fees for his contempt, imposes a sentence, and provides purge conditions, we conclude that the trial court intended to grant Jenae's motion but mistakenly stated that both motions to show cause were denied. This matter must be remanded so that this mistake may be corrected.

### 2. Contempt Finding Against Kyle

{¶ 14} The trial court found Kyle in contempt for failing to pay Jenae $1,035—her half of the equity in the parties' Honda four-wheeler ($585) and stock trailer ($450).

7.

Kyle argues that he placed this money in escrow pending a determination by the court resolving the chicken-coop payment and the dispute over tax exemptions.[1] He also argues that Jenae already received this money because there was an error in the trial court judgment in Jenae's equity calculation *adding* $550 (Kyle's share of the chicken coop) instead of subtracting it. Kyle does not identify the specific page or paragraph number in the court's 76-page judgment where he claims this miscalculation occurred.

{¶ 15} Jenae agrees that "[t]here is an issue with the equity calculation on page 52 line 70." She claims, however, that this portion of the judgment deducted Kyle's share of the equity in the chicken coop from her overall equity calculation. Thus, Kyle has already been credited with the amount Jenae owed him. In any event, Jenae claims, Kyle, at a minimum, should have paid her the difference between the $1,035 he owed her and the $550 he claims she owed him.

{¶ 16} "An appellate court reviews a trial court's contempt rulings for an abuse of discretion." *A.P. v. J.Z*, 6th Dist. Wood No. WD-13-058, 2015-Ohio-1265, ¶ 16, citing *State ex rel. Celebrezze v. Gibbs,* 60 Ohio St.3d 69, 75, 573 N.E.2d 62 (1991). An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or

---

[1] Jenae filed her 2018 tax return on January 31, 2019, claiming exemptions for both children. The March 1, 2019 decree awarded the exemption for B.K. to Kyle and the exemption for L.K. to Jenae, so Jenae amended her tax return accordingly on March 8, 2019. In the meantime, Kyle had tried to claim B.K., so his tax return was rejected because B.K. had already been claimed by Jenae. Kyle amended his return to remove the exemption for B.K. He would have had to file a third time to again claim B.K. He claims he "lost out on over $3,700" because of Jenae improperly claiming B.K. the first time she filed her tax return.

8.

unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). An unreasonable decision is one that lacks sound reasoning to support the decision. *Hageman v. Bryan City Schools*, 10th Dist. Franklin No. 17AP-742, 2019-Ohio-223, ¶ 13. "An arbitrary decision is one that lacks adequate determining principle and is not governed by any fixed rules or standard." *Id.*, quoting *Porter, Wright, Morris & Arthur, LLP v. Frutta del Mondo, Ltd.*, 10th Dist. No. 08AP-69, 2008-Ohio-3567, 2008 WL 2779511, ¶ 11. And an unconscionable decision is one "that affronts the sense of justice, decency, or reasonableness." *Id.*

{¶ 17} The court calculated Jenae's equity at page 52, paragraph 70 of the March 1, 2019 judgment. The court starts with her equity in the marital home ($38,773.50). It then subtracts out certain debts from that amount. Among the debts it subtracts out is half the couple's consumer debt ($9,928.50). Importantly, the court *added* the $550 Jenae owed to Kyle for the chicken coop to Jenae's half of the consumer debt ($9,928.50 + $550 = $10,478.50). It then subtracted that total amount of consumer debt from Jenae's equity ($38,773.50 - $10,478.50 = $28,295). In other words, the $550 was added to Jenae's share of the parties' *debt*—it was not added to her *equity*. It was already accounted for in the equity calculation, and Jenae owes nothing more to Kyle for his portion of the equity in the chicken coop.

{¶ 18} Because Jenae was not incorrectly credited with Kyle's half of the equity in the chicken coop, he in fact owes her $1,035. This was required to be paid within 30

9.

days of the court's March 1, 2019 judgment.  It was not.  Accordingly, we find no abuse of discretion in the trial court's judgment finding Kyle in contempt for failing to pay $1,035 to Jenae for her equity in the four-wheeler and trailer.

### 3. Attorney Fees

{¶ 19} The trial court ordered Kyle to pay Jenae $500 for attorneys fees "for the contempt findings."  Kyle argues that the $500 attorney-fee award was contrary to law because the court failed to consider its reasonableness.  He maintains that expert testimony was required to establish the prevailing hourly rate in the community for similar services, and the court was required to calculate the number of hours reasonably expended and multiply that number by the hourly fee.  He insists that because Jenae's attorney failed to introduce evidence of the hours spent on the motion or her hourly rate, we should vacate the attorney-fee award.

{¶ 20} Jenae responds that Kyle's argument ignores Wood County Domestic Relations Rule 6.03(B)(3) and (4), which provides that "[a]bsent evidence as outlined above, $500 shall be considered a reasonable amount, unless otherwise determined by the court" and "[e]xpert testimony is not required to prove reasonableness of attorney fees." Here, she claims, the trial court followed its local rule when it ordered Kyle to pay attorney fees of $500.

{¶ 21} "Attorney fees may be awarded to parties who successfully move for civil contempt, and the award is reviewed for abuse of discretion."  *Passage v. Passage*, 2d

Dist. Greene No. 2013-DR-190, 2016-Ohio-1097, ¶ 31, citing *State ex rel. Fraternal Order of Police Captain John C. Post Lodge No. 44 v. City of Dayton,* 49 Ohio St.2d 219, 229, 361 N.E.2d 428 (1977). Awards of small amounts of attorney fees are permitted without evidence of reasonableness. *Passage* at ¶ 32, citing *Hoagland v. Hoagland,* 2d Dist. Miami No.2014-CA-30, 2015-Ohio-2426, ¶ 19.

{¶ 22} The $500 attorney-fee award was properly awarded under the local rules. And because the award was "small," no evidence of reasonableness was required. Accordingly, the trial court judgment awarding $500 to Jenae for attorney fees was not contrary to law.

*4. Kyle's Motion for Contempt*

{¶ 23} Finally, Kyle argues that the trial court erred in denying his motion for contempt because (1) Jenae failed to pay him $550.00 for his equity in the chicken coop, and (2) she admitted that she disobeyed the order requiring curbside exchanges of the children.

{¶ 24} We have already resolved the first issue. We would add that Kyle retained possession of the chicken coop, providing another reason to deny his request for sanctions. Specifically, Jenae arranged to have the chicken coop moved, but discovered that it could not be moved until the electrical was disconnected. This rendered her unable to move the coop within 30 days of the trial court judgment. Because she was unable to remove the coop within 30 days, Kyle refused to accommodate her in making alternative

11.

arrangements to move it at a later date, and it remained on his property. Because Kyle was withholding the chicken coop from Jenae, it was unreasonable for him to expect that she would pay him for it.

{¶ 25} As for curbside exchanges of the children, it is true that Jenae agreed to curbside exchanges, which the local parenting plan and companionship schedule explains prohibits the parent from entering the property of the other parent for exchange of the children. The rule requires the parent to park "in front of the home" for these exchanges. It provides: "The residential parent remains in the home while the other parent remains in the car and there is no communication between the parents."

{¶ 26} Despite originally agreeing to this mode of exchanging the children, Jenae eventually realized that this was neither safe nor practical because Kyle lives on a narrow country road with a long driveway and the children were having to carry their belongings up and down that long driveway, sometimes in unseasonable weather. She, therefore, pulled into Kyle's driveway. At first she was driving up to his garage, but after speaking with the guardian ad litem, she began pulling into the driveway one car length and dropping the children off there. While this did not shorten their walk very much, it at least eliminated the danger posed by dropping them off on the narrow road. Jenae lives on a busy road, so she too preferred that Kyle pull into her driveway.

{¶ 27} The GAL testified at the hearing. She agreed with Jenae that it was potentially dangerous to conduct exchanges in the manner originally ordered given the

12.

location of the parties' homes. While she believed that Kyle was being petty in prohibiting drop-offs from occurring closer to his garage, she appeared to resign herself to the fact that the parties' disdain for each other would not permit a more sensible arrangement.

{¶ 28} Again, it is within a trial court's discretion whether to impose sanctions. While Jenae admitted to violating the order by failing to drop the children off in the street, we find that the trial court did not abuse its discretion in refusing to hold her in contempt for her actions. While we do not encourage parties to disregard court orders, ultimately the children's safety is of paramount importance. Under the specific circumstances presented here, the children's safety warranted Jenae's minor deviation from the strict curbside procedure. Importantly, there is no indication that Jenae ever got out of her car or forced any interaction with Kyle during the exchanges.

{¶ 29} Accordingly, we find that the trial court did not abuse its discretion when it denied Kyle's motion for sanctions. We find Kyle's first assignment of error not well-taken. We remand this matter to the trial court, however, because the trial court mistakenly stated that both "Plaintiff and Defendant's Show Cause motions are denied." This paragraph of the trial court judgment must be corrected on remand to indicate that defendant's motion to show cause was, in fact, granted.

13.

## B. Shared Parenting

{¶ 30} In his second assignment of error, Kyle argues that the trial court erred when it denied his motion for shared parenting. He claims, first, that the court failed to issue findings of fact and conclusions of law supporting its denial of the motion. He also contends that he demonstrated a change of circumstances warranting a shared parenting plan, including his recent marriage, the fact that he currently provides health insurance for the children, and Jenae's conduct in enrolling the children in counseling without telling him, taking the children out of state without telling him, refusing to send clothing and sporting equipment for the children "out of spite and revenge," blocking Kyle from his son's social media account, and insisting on receiving text messages when the divorce entry requires communication via Our Family Wizard. Kyle insists that there would be no harm in granting a shared parenting plan here because there would be no change in the children's environment given that he is requesting only a technical change in his status rather than a change in the circumstances of visitation or child support.

{¶ 31} In response, Jenae disagrees that the court did not provide findings of fact and conclusions of law in support of the denial of Kyle's motion for shared parenting. She points to the magistrate's conclusions of law, which recognize that in determining whether to permit a shared parenting plan, R.C. 3109.04(F)(2) requires that the court consider the parties' ability to communicate and the ability of each parent to encourage love, affection, and contact between the child and the other parent. She highlights

14.

multiple factual findings made by the magistrate demonstrating that a shared parenting plan would not be successful.

{¶ 32} Jenae also argues that Kyle did not demonstrate a change in circumstances. While Kyle cites *Ford v. Ford*, 5th Dist. Tuscarawas No. 2012AP 030025, 2012-Ohio-5454, for the proposition that a change in one parent's marital status may constitute a change of circumstances to be considered in seeking a change in the allocation of parental rights and responsibilities, Jenae maintains that the facts in *Ford* are distinguishable. She notes, in fact, that even though Kyle characterizes his recent marriage as a change in circumstances *in favor* of shared parenting, L.K. actually expressed that she did not want to be approached at school by Kyle's new wife, who works at her school.

{¶ 33} Finally, Jenae emphasizes that the GAL recommended no change in the residential parent and describes how the GAL had to intervene just to get Kyle to agree to allow Jenae to drop the children off in his driveway instead of dropping them at the end of the narrow country road on which he lives. Jenae notes that the GAL's testimony reflected that the parties' adjustment counselor described Kyle as being "nitpicky," argumentative, hostile, and rigid. Jenae argues that a shared parenting plan is not in the children's best interests because the parties cannot cooperate and Kyle wants to use a shared parenting plan as a means to assert control and to veto her decisions.

{¶ 34} "A trial court has broad discretion in determining whether to order shared parenting." *Heilman v. Heilman,* 3d Dist. Hardin No. 6-12-08, 2012-Ohio-5133, ¶ 14,

15.

citing *Huelskamp v. Hueslkamp,* 185 Ohio App.3d 611, 2009-Ohio-6864, 925 N.E.2d 167, ¶ 48 (3d Dist.); R.C. 3109.04(D)(1)(b). We will not reverse a trial court judgment denying a motion for shared parenting absent an abuse of discretion. *Id.*

{¶ 35} Under R.C. 3109.04(F)(2), in determining whether shared parenting is in the best interest of the children, the court must consider multiple factors. Among them, the court must consider "[t]he ability of the parents to cooperate and make decisions jointly, with respect to the children," and "[t]he ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent." R.C. 3109.04(F)(2)(a) and (b). The court must also consider "[t]he recommendation of the guardian ad litem of the child, if the child has a guardian ad litem." R.C. 3109.04(F)(2)(e).

{¶ 36} Here, despite Kyle's claim that the court failed to make findings of fact and conclusions of law, the magistrate made numerous findings in support of its decision to deny Kyle's motion for shared parenting. It found that (1) Kyle would not work with Jenae to accommodate a simple exchange of property; (2) Kyle tried to use the court order concerning communication occurring through Our Family Wizard as a justification to exclude Jenae from group text messaging for parents of basketball players[2]; (3) the parties could not share the children's clothing and sporting equipment, forcing each to

---

[2] Kyle was B.K.'s basketball coach. He created a group text message for parents of basketball players as a means of alerting them to information pertinent to the team, such as scheduling issues. He refused to add Jenae to the group, claiming that the court order provided that all communication between them must take place via Our Family Wizard.

16.

buy their own attire and equipment for use in their respective homes; (4) Kyle interrogates the children about Jenae's activities, which the magistrate found "was upsetting to them;" (5) Kyle refused to allow Jenae to drop the children off closer to the garage, which the magistrate noted "does not send a good message to the children of cooperation;" (6) Kyle refused to allow the children to participate in certain sporting activities without consulting them about their desire to do so; and (7) the GAL recommended no changes to the residential parent or parenting time. It also found that Jenae had taken the children for counseling without communicating with Kyle and had taken a trip with them without being forthcoming to Kyle about the itinerary.

{¶ 37} We find that the magistrate did, in fact, make factual findings in support of her decision to deny Kyle's motion for shared parenting—which were adopted in full by the trial court—and these factual findings support the magistrate's conclusion that shared parenting would not be successful given Kyle and Jenae's inability to communicate, cooperate, and encourage love, affection, and contact between the child and the other parent.

{¶ 38} As for Kyle's reliance on *Ford*, 5th Dist. Tuscarawas No. 2012AP 030025, 2012-Ohio-5454, the appellate court there found no plain error where the trial court concluded that the mother's remarriage, which was then followed by a divorce, constituted a change in circumstances justifying a change in the allocation of parental rights and responsibilities. In *Ford*, the child had a positive relationship with his

17.

mother's new husband, but experienced negative repercussions after they divorced—e.g., he was left home alone more, was tardy at school, and served two in-school suspensions. This and a variety of other statutory factors led the court to conclude that a change in custody to his father was in the child's best interest.

{¶ 39} Here, even if we agree that Kyle's marriage constitutes a change in circumstances, we cannot say that it is a change warranting shared parenting. We find Kyle's second assignment of error not well-taken.

### C. Reallocation of Marital Property

{¶ 40} In his third assignment of error, Kyle argues that the trial court reallocated the division of marital property by permitting Jenae 60 days to pick up the pool table and chicken coop and by charging him with responsibility for disconnecting the electricity to the chicken coop. He maintains that the parties' agreement required arbitration with respect to post-divorce disputes over certain property—here, the pool table—and the trial court lacked the authority to hold him responsible for the "debt associated" with moving the chicken coop.

{¶ 41} Jenae argues that providing Jenae additional time to pick up the pool table and chicken coop was not a "reallocation" of marital property. We agree with Jenae. We find no abuse of discretion in the trial court's decision allowing Jenae 60 days to retrieve the items from Kyle's property. We also find no abuse of discretion in the court's decision requiring Kyle to arrange for disconnecting the electricity.

18.

{¶ 42} We find Kyle's third assignment of error not well-taken.

### D. Reallocation of Tax Exemption

{¶ 43} In his fourth assignment of error, Kyle argues that the trial court erred when it modified the March 1, 2019 judgment to provide that Jenae receive tax exemptions for both of the children. First, he complains that the magistrate made no findings of fact pertinent to the exemptions. He maintains that while there is a presumption in favor of granting the exemption to the residential parent, the circumstances here warrant a deviation from that presumption because the children "de facto" reside with both parents, he pays child support, and he pays for health insurance and half of the children's school expenses, clothing, sporting equipment, and extra-curricular activities. Kyle insists that if the court had considered the statutory factors instead of defaulting to the residential-parent presumption, it would have found that the children's best interest requires that the exemptions be split equally, as they had been.

{¶ 44} Jenae responds that the health insurance Kyle provided should be considered a gift because he was never ordered to provide it. She points out that Kyle is making $4,000 per year more than she is, and the magistrate noted that Jenae would qualify for Medicaid for the children if she is able to claim both of them on her taxes. She insists that Kyle could have asked for a new child-support calculation when he began providing health insurance for the children, but he failed to do so.

19.

**{¶ 45}** "Under R.C. 3119.82 there is a presumption in favor of granting the dependency tax exemption to the residential parent." *King v. King*, 4th Dist. Jackson No. 12CA2, 2013-Ohio-3426, ¶ 4. "Before a trial court can grant the tax exemption to the nonresidential parent, it must find that it furthers the best interests of the children." *Id.* We review a trial court's judgment allocating tax deductions and exemptions under an abuse-of-discretion standard. *In re J.H.*, 7th Dist. Jefferson No. 10 JE 15, 2011-Ohio-6536, ¶ 13.

**{¶ 46}** Here, Jenae is the residential parent, therefore, the presumption rests in her favor. But in addition to this, the magistrate's decision finds that Jenae would be eligible for Medicaid if she could claim both the children and concludes that "Defendant"—i.e., Jenae—is the appropriate parent to provide health insurance. Given these findings and conclusions, the trial court judgment is premised on more than just the default rule provided under the statute. We find no abuse of discretion in the trial court's decision to allocate to Jenae the tax exemptions for both children.[3]

**{¶ 47}** We find Kyle's fourth assignment of error not well-taken.

### E. Health Insurance

**{¶ 48}** In his sixth assignment of error, Kyle argues that the trial court erred in failing to expressly indicate in its judgment that Kyle is responsible for providing the

---

[3] Jenae asks that the matter be remanded to the trial court so that the CSEA worksheet may be corrected to provide that Jenae is the health insurance obligor. This issue is addressed in our analysis of Kyle's sixth assignment of error.

20.

children's health insurance; instead, he claims, the magistrate's decision merely notes that Kyle is "the appropriate parent" to provide health insurance. He insists that because the judgment does not recognize that he pays for the children's health insurance, his child support obligation is not being reduced commensurately with the amount he pays for their insurance. He maintains that the judgment should be amended to expressly provide that he is responsible for health insurance and such order should be retroactive to August of 2019, when he began insuring the children.

{¶ 49} Jenae responds that the magistrate's decision actually designates her—the "defendant" and "obligee"—as the appropriate person to provide health insurance. She maintains that the only mistake here was that the wrong box was checked on the child support computation worksheet, and she asks that the matter be remanded so that the court can select the correct box on the worksheet. And although she acknowledges that Kyle began insuring the children in August of 2019, she emphasizes that this was not the case when she filed her motion and she had no way of knowing when or if Kyle would again obtain coverage for the children.

{¶ 50} The child support computation worksheet designates Kyle as the obligor with respect to the provision of health insurance and specifies the amount of his out-of-pocket health insurance premiums. But the magistrate's decision concludes that "[a]ccording to R.C. 3119.30(B), Defendant, as the Obligee, is the appropriate parent to provide health insurance for the children." Jenae is the defendant and is designated the

21.

obligee on the worksheet. Although the magistrate's decision—and the trial court judgment adopting it—could have been clearer, we interpret the decision as now obligating Jenae to provide health insurance—not Kyle. We reach this conclusion based on the magistrate's observation that Jenae will qualify for Medicaid if permitted to take the tax deductions for both children (as is now the case under the court's December 2, 2020 order). Accordingly, we agree with Jenae that this contradiction between the worksheet and the judgment requires that we remand the matter to the trial court so that the worksheet may be revised and the appropriate box checked. Specifically, line 10a of the child support computation worksheet designating Kyle the health insurance obligor must be corrected, as must line 10b, which credited Kyle with $2,588 for health insurance premiums (and the corresponding lines in the worksheet impacted by this change).

{¶ 51} Accordingly, we find no merit in Kyle's position that he is responsible for health insurance and is entitled to a commensurate reduction in his child support obligation. We find his sixth assignment of error not well-taken.

### F. Modification of Child Support

{¶ 52} In his fifth assignment of error, Kyle argues that the trial court abused its discretion in reducing his child-support deviation from 50 percent to 30 percent. He insists that the children are with him 50 percent of the time and he already pays 50 percent of their expenses, therefore, a 50 percent deviation is appropriate.

22.

{¶ 53} Jenae responds that Kyle is actually receiving a 70 percent deviation based on the numbers that appear on the child support computation worksheet—a built-in deviation of ten percent based on his visitation with the children, plus an additional 60 percent deviation. She argues that we should remand the matter to the trial court so that Kyle's obligation may be recalculated to reflect a 30 percent deviation instead of a 70 percent deviation.

{¶ 54} R.C. 3119.02 governs the calculation of a party's child support obligation and requires that child support payments be calculated using the basic child support schedule, the applicable worksheet, and the other provisions of R.C. Chapter 3119. Under R.C. 3119.22, a court may "order child support in an amount that deviates from the calculation obtained from the schedule and worksheet" if after considering the factors set forth in R.C. 3119.23, it determines that the amount calculated "would be unjust or inappropriate and would not be in the best interest of the child." *Brown v. Brown*, 9th Dist. Wayne No. 02CA0030, 2003-Ohio-239, ¶ 9; R.C. 3119.22. If the court determines that a deviation is warranted, it must "enter in the journal the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination." R.C. 3119.22.

23.

**{¶ 55}** It is rebuttably presumed "that the annual obligation calculated using the child support worksheet is the amount of child support that should be awarded." *Irish v. Irish*, 9th Dist. Lorain No. 10CA009810, 2011-Ohio-3111, ¶ 16, citing R.C. 3119.03. The party who seeks to deviate from that amount has the burden to rebut the presumption by "provid[ing] facts from which the court can determine that the actual annual obligation is unjust or inappropriate and would not be in the children's best interest." *Id.*

**{¶ 56}** R.C. 3119.23 lists 16 factors a court may consider in determining whether to grant a deviation. Among those factors, a trial court may award a downward deviation in child support for "extended parenting time." R.C. 3119.23(C). When the parties share equal parenting time, the court may—but is not required—to award a downward deviation. *Williams v. Williams*, 10th Dist. Franklin No. 15AP-739, 2016-Ohio-3344, ¶ 15. Equal parenting time is but one factor to be considered in determining whether to deviate from the child support guidelines. *Dobbins v. Dobbins*, 5th Dist. Stark No. 2019CA00185, 2020-Ohio-4000, ¶ 23.

**{¶ 57}** In her decision, the magistrate explained that she was recommending a 30 percent deviation in Kyle's support obligation under R.C. 3119.23(C) based on his extended parenting time and his sharing of some of the children's expenses. We review matters concerning child support for an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). In *Noel v. Noel*, 6th Dist. Wood No. WD-09-006, 2009-Ohio-6678, ¶ 54, we found no abuse of discretion in the trial court's decision

24.

to award a 25 percent deviation from the child support worksheet calculations even though the father had the children 50 percent of the time. We noted that the time spent with each parent is just one factor to be considered in awarding a deviation.

{¶ 58} We reach the same conclusion here. The trial court was permitted to allow a downward deviation in Kyle's child-support obligation based on his "extended parenting time," but it was not required to do so. Moreover, it was within the trial court's discretion to determine the appropriate amount of such deviation. It was not required to grant a 50 percent deviation as Kyle argues. As in *Noel*, we find no abuse of discretion in the amount the trial court awarded here.

{¶ 59} However, Jenae is correct that the deviation set forth in the worksheet exceeds the 30 percent ordered by the court. The child support computation worksheet recommends a monthly child-support payment of $560.55, but it then provides for a deviation of $336.44, reducing Kyle's monthly obligation to $224.11. This equates to a deviation of 60 percent—not 30 percent. Additionally, the calculations in the worksheet include an adjustment to Kyle's income for the cost of health insurance that he was providing for the children. This impacted the parties' income shares (Kyle-51.32 percent, Jenae-48.68 percent) and, ultimately, Kyle's support obligation. But Kyle is no longer the parent who will be providing health insurance, so this adjustment to his gross income should be eliminated.

{¶ 60} Given our conclusion above that (1) the tax exemptions were given to Jenae so that she could qualify for Medicaid, (2) the worksheet incorrectly provides that *Kyle* is responsible for health insurance, (3) the worksheet adjusts Kyle's income downward to account for health insurance, and (4) the child support obligation reflects a 60 percent deviation instead of a 30 percent deviation, this matter must be remanded so that the child support calculation worksheet may be corrected and Kyle's support obligation recalculated to reflect the trial court's decision on these issues. Accordingly we find Kyle's fifth assignment of error not well-taken, but we find that remand is nevertheless necessary to correct (1) line 10b of the child support computation worksheet, which credited Kyle with $2,588 for health insurance premiums (and the corresponding lines in the worksheet impacted by this change); and (2) lines 25a and 25c crediting Kyle with a 60 percent deviation for child support instead of 30 percent.

### III. Conclusion

{¶ 61} We find Kyle's six assignments of error not well-taken.

{¶ 62} With respect to his first assignment of error, we find that the trial court did not abuse its discretion in denying Kyle's motion for sanctions and granting Jenae's. Kyle failed to pay Jenae the $1,035 he owed her under the March 1, 2019 judgment, and Jenae did not owe Kyle the $550 he claimed. The court did not abuse its discretion in declining to find Jenae in contempt for failing to strictly comply with the guidelines for curbside exchanges. Finally, the trial court judgment was not contrary to law in awarding

26.

Jenae attorneys fees. The court was permitted under the local rules to make an award of attorney fees of $500 without evidence of reasonableness.

{¶ 63} With respect to Kyle's second assignment of error, we find that the trial court did not abuse its discretion in denying his motion for shared parenting. The parties are unable to cooperate and communicate and are unable to encourage love, affection, and contact between the child and the other parent, therefore, rendering it unlikely that a shared parenting arrangement would be successful.

{¶ 64} With respect to Kyle's third assignment of error, the trial court did not abuse its discretion in allowing Jenae an additional 60 days to retrieve the pool table and chicken coop from Kyle's property and requiring Kyle to arrange to disconnect the electricity to the chicken coop. This did not constitute a reallocation of the division of marital property.

{¶ 65} With respect to Kyle's fourth assignment of error, the trial court did not abuse its discretion in reallocating to Jenae the tax exemptions for both children. There is a presumption that Jenae, as residential parent, is entitled to both exemptions, and the trial court observed that awarding these exemptions to Jenae will enable her to qualify for Medicaid for the children.

{¶ 66} With respect to Kyle's fifth assignment of error, the trial court did not abuse its discretion in awarding a 30 percent deviation from his child-support obligation and not a 50 percent deviation. The child support computation worksheet contains errors

27.

that must be corrected on remand, however, because the worksheet mistakenly credits Kyle with a 60 percent deviation.

{¶ 67} And with respect to Kyle's sixth assignment of error, we interpret the trial court order as obligating Jenae—the defendant and "obligee"—to provide health insurance for the children. On remand, the child support computation worksheet must be corrected to designate her as the obligor and to eliminate the adjustment to Kyle's gross income for provision of health insurance.

{¶ 68} Accordingly, we affirm the December 2, 2020 judgment of the Wood County Court of Common Pleas, Domestic Division, but we remand this matter to the trial court to correct the following errors and inconsistencies discovered during our review of this appeal:

(1) the paragraph ordering that both "Plaintiff and Defendant's Show Cause motions are denied;"

(2) line 10b of the child support computation worksheet crediting Kyle with $2,588 for health insurance premiums (and the corresponding lines in the worksheet impacted by this change);

(3) line 10a of the child support computation worksheet designating Kyle the health insurance obligor; and

(4) lines 25a and 25c crediting Kyle with a 60 percent deviation for child support instead of 30 percent.

28.

**{¶ 69}** Kyle is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

Gene A. Zmuda, P.J.

Myron C. Duhart, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.