[Cite as *Lause v. Lause*, 2025-Ohio-5670.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Jennifer Lause

      Appellee

v.

Samuel Lause

      Appellant

Court of Appeals No. {87}WD-25-004

Trial Court No. 2020 DR 0052

**DECISION AND JUDGMENT**

Decided: December 19, 2025

* * * * *

Dorothy L. Williams, for appellee.

Karin L. Coble, for appellant.

* * * * *

**SULEK, P.J.**

{¶ 1}Appellant Samuel Lause appeals the order of the Wood County Court of

Common Pleas, Domestic Relations Division, denying his request for modification of

child support, reallocation of parental rights, and reallocation of tax dependency. For the

reasons that follow, the trial court's judgment is affirmed, in part, and reversed, in part.

**I. Factual Background and Procedural History**

{¶ 2}Samuel and appellee Jennifer Lause were married on July 30, 2015. They

have one child, W.L., born of the marriage. On May 5, 2022, the parties divorced. In the

judgment entry, Jennifer was designated the residential parent and legal custodian of W.L., and the parties shared parenting time.

{¶ 3}Relevant here, significant testimony was taken during the divorce proceedings regarding the parties' preferences and practices for seeking medical treatment when W.L. was sick. Jennifer preferred limited medical intervention, choosing instead to utilize home remedies and treatments. In one instance, in November 2019, W.L. was sick for approximately three weeks. At Samuel's urging, Jennifer took W.L. to the doctor, who diagnosed her with a virus and recommended that the parents let it run its course. W.L. has a listed pediatrician but does not receive regular well-check appointments. She also did not see the dentist. At the time of the divorce, neither party provided health insurance for W.L. and she was not on Medicaid.

{¶ 4}The parties also testified concerning W.L.'s education. W.L. was entering kindergarten and Jennifer wanted to homeschool her, noting that she had homeschooled her older son and Samuel had experience homeschooling as well. Samuel has an older daughter, D.L., who has down syndrome and who receives in-home instruction from a teacher paid by the state. Samuel preferred that W.L. attend a formal school, explaining that it would be difficult for Jennifer to homeschool while she worked full-time. Jennifer responded that kindergarten only takes a couple of hours.

{¶ 5}Another issue addressed during the divorce was child support. Samuel was not working at the time of the divorce. Previously, he had been a union crane operator, earning $70,000 in 2017, $90,000 in 2018, and $100,000 in 2019. He stopped working in

2.

March or April of 2020, around the time the divorce complaint was filed, and went on unemployment. Before taking unemployment benefits, Samuel was on pace to earn between $65,000 and $85,000 that year. Samuel testified that although he was not "disabled," his lower back problems and diverticulitis prevented him from working again as a crane operator. It was noted that he sought to work as a car mechanic from his home, but was having difficulty obtaining clients. Jennifer worked full-time at Lowe's, earning approximately $31,000 per year. She also earned approximately $4,000 per year making and selling cakes.

{¶ 6}In determining the appropriate amount of child support, the trial court found that Samuel was voluntarily underemployed and determined that his earning capacity was $80,000 annually. It reduced that amount, however, and only imputed an income of $40,000 annually to Samuel because "[h]e has some objective reasons for either working limited hours or incurring expense for [D.L.'s] care. This imputation allows for the cost of care for [D.L.] while working, and for [W.L.'s] presence in Sam's home on the days the [guardian ad litem] recommended."

{¶ 7}As a final relevant matter, the trial court determined that Jennifer would claim W.L. as a dependent on her taxes. The trial court recognized a presumption in favor of awarding the tax exemption to the residential parent and found that Samuel did not present sufficient evidence—such as proof of net tax savings—to allow it to find allocating the right to Samuel to claim W.L. as a dependent was in the child's best interest.

3.

{¶ 8}Neither party appealed the judgment entry of divorce.

{¶ 9}Seven months later, on December 9, 2022, Samuel filed a pro se motion to (1) get full custody, (2) reduce child support, and (3) claim W.L. every other year on his taxes. Two months after that, on February 9, 2023, he filed a pro se motion for a change of parental rights and responsibilities.

{¶ 10}On September 29, 2023, the trial court held a hearing on Samuel's motions. Samuel first presented testimony that his older daughter, D.L., qualifies for part-time caregiver services through the Wood County Board of Developmental Disabilities paid for by Medicaid. The department has been working with the family for several years, but is currently unable to locate a provider of those caregiver services.

{¶ 11}Samuel then testified. He stated that he lives in the "country home" in which W.L. was born. It has goats, chickens, and other pets and he described it as the only home that W.L. knows.

{¶ 12}He wants to have full custody of W.L. not because he wants to take W.L. from Jennifer, but because he believes it would be better for W.L.'s health and education. He described that W.L. is a very bright child who will turn seven years old in a few months and who should be in first grade, but he noted that she did not know how to read or how to write numbers above 10. Samuel believes she is not receiving enough education since Jennifer is busy working two jobs and he is busy working on customers' cars. He stated that he tries to homeschool to the best of his ability, and he teaches W.L. and D.L. at the same time. If he has W.L. for two days, he tries to do a total of three

4.

hours of education with her. He would prefer that W.L. go to a small private school or at least do online virtual schooling.

{¶ 13}Regarding W.L.'s health, Samuel testified that she only had been to the doctor once in her life when he demanded that Jennifer take her in November 2019. Samuel also stated that she had needed extensive dental work. He took her to the Wood County Health Department, but the work was too much for them, and they referred him to UT Dental in the Toledo Hospital. Jennifer refused to allow Samuel to pick W.L. up for the dental appointment. W.L. was then placed on a call list and Jennifer later agreed to allow him to take W.L. when UT Dental called with an opening. W.L. needed three crowns, one tooth pulled, and two fillings.

{¶ 14}As to his financial situation, Samuel runs his own auto mechanic business out of his house. He does so because it allows him to be home to care for and homeschool his children. He estimates that he works approximately 25 hours a week because of his time spent taking care of his children. He testified that he only has W.L. when he also has D.L. and it helps because the girls can look after one another. He further described that he has diverticulitis and lower back pain, commenting that his "L-5 disk is gone." He stated that he was physically capable of returning to work as a crane operator, but it would be detrimental for his health. He believes that it is in W.L.'s best interest that he work from home, and he believes that he is not underemployed. Samuel testified that his income is approximately $2,000 per month. In 2020 his income was

$42,000, in 2021 it was $23,000, and in 2022 it was $0.  The 2022 tax return showed that Samuel reported business losses from his home auto repair business.

{¶ 15}Jennifer also testified.  She is currently employed at Lowe's, having recently voluntarily reduced her work schedule to 30 hours a week so that she could devote extra time to W.L.'s education.  She has medical insurance for W.L. through her employment, and is looking into obtaining dental and vision insurance for her.  As of July 2023, Jennifer had earned approximately $19,000.  In addition, she earns approximately $5,000 per year for her cake business, but she hopes to increase that to offset her reduction in hours from Lowe's.  Her total income in 2022 was $31,000, and she expected a similar total income for 2023.

{¶ 16}At the time of the hearing, Jennifer was planning to move from her apartment to a three-bedroom house nearby, where she would live with W.L. and her older son from a previous relationship, H.L.  Jennifer homeschools both W.L., who is in kindergarten, and H.L., who is in eleventh grade.  She testified that homeschool is going well and she spends approximately one to two hours with W.L.  According to Jennifer, the lessons are "fairly simple" in kindergarten and W.L. is getting through them quickly.  She stated that W.L. reports that she does not do schooling with Samuel, so Jennifer tries to catch her up on the days that W.L. is with her.

{¶ 17}Regarding W.L.'s health, Jennifer testified that W.L. has a pediatrician and last saw the doctor one month before the hearing for a standard well-check, which she admitted was done on the advice of counsel.  W.L. has no health concerns.  As to W.L.'s

6.

dental health, Jennifer testified that she took W.L. to the dentist many months before Samuel took her to the Wood County Health Department. The dentist said that W.L. had a couple of cavities that needed to be filled and referred her to a specialist because the cavities were "bigger." Jennifer did not follow up on the referral because she did not have insurance and did not have the money to pay for it.

{¶ 18}She next stated that she has concerns about W.L. and D.L. together. She testified that W.L. has come home with bruises and reported on at least one occasion that the bruise was from D.L. pushing her. Jennifer is concerned that the girls are being left together unsupervised.

{¶ 19}Finally, she testified that the circumstances between her, Samuel, and W.L. are all the same as they were at the time of the divorce. She did note that Samuel owed over $10,500 in child support arrearages.

{¶ 20}Following the hearing, the magistrate issued her decision, denying Samuel's motions.

{¶ 21}On the issue of modifying custody, the magistrate found that there has been no change to the circumstances of the parties and that things are the same as they were at the time of the divorce. The magistrate specifically found that W.L.'s dental issues are not a change of circumstances. She, therefore, found that Samuel did not demonstrate a change of circumstances that would justify a change of custody under R.C. 3109.04.

{¶ 22}Concerning Samuel's request to modify child support, the magistrate again found that the circumstances are unchanged. She found that Samuel had an earning

7.

capacity of $80,000, and that it would be in W.L.'s best interest to impute an annual income of one-half of his earning capacity, resulting in an imputed income of $40,000. The magistrate reasoned that "[t]here is some rational basis for working limited hours. If he were working full-time he would have to find child care for his minor children at a cost, as the Board of Developmental Disabilities has been unable to find care that would accept payment through Medicaid." She also found that Jennifer's income is consistent with her income of $36,676.08 that was used at the time of the divorce, and any change to that income is negligible. The magistrate concluded that a modification of child support was not warranted.

{¶ 23}Finally, as to the ability to claim W.L. as a dependent for tax purposes, the magistrate found that Samuel did not present evidence addressing the R.C. 3119.82 factors to warrant a reallocation of the tax exemption.

{¶ 24}Samuel filed objections and supplemental objections to the magistrate's decision. The trial court addressed Samuel's objections in its December 30, 2024 judgment entry. In particular, the trial court examined Samuel's objection to the magistrate's imputation of income. It found that there was no change in circumstances, and therefore no reason to change the imputation of income. Furthermore, it found that the magistrate provided a basis for imputing income while recognizing the unique demands of a parent of a child with special needs, and there was no reason to set aside the magistrate's finding that the continued imputation of income was in the best interest of W.L. Notably, neither the magistrate nor the trial court completed a child support

8.

computation worksheet.  Finding no merit to any of Samuel's objections, the trial court denied them in their entirety and adopted the magistrate's decision.

## II. Assignments of Error

{¶ 25}Samuel timely appeals the trial court's December 30, 2024 judgment, asserting five assignments of error for review:

> 1. The trial court erred by not recalculating child support under the guidelines using the child support worksheet prior to considering modification of child support.

> 2. The trial court erred by not expressly finding that appellant was voluntarily underemployed before imputing income for child support purposes.

> 3. The trial court abused its discretion by using $40,000 as the basis for computing child support.

> 4. The trial court abused its discretion by not designating Appellant as legal custodian of the parties' daughter.

> 5. The trial court abused its discretion by not permitting Appellant to claim the parties' daughter every other year for taxes.

## III. Analysis

### A. Motion to Modify Child Support

{¶ 26}Samuel's first three assignments of error pertain to his motion to modify child support:  his first assignment of error raises the threshold issue of whether the trial court abused its discretion by not completing a child support worksheet; his second assignment of error argues that the trial court abused its discretion when it did not expressly find that he was voluntarily underemployed before imputing income; and his third assignment of error challenges the amount of income imputed to him.

**{¶ 27}** A trial court's child support modification order is reviewed for an abuse of discretion. *Funkhouser v. Funkhouser*, 2019-Ohio-733, ¶ 31 (6th Dist.), citing *Morrow v. Becker*, 2013-Ohio-4542, ¶ 9. An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶ 28}** Samuel argues in his first assignment of error that the trial court abused its discretion when it did not complete a new worksheet. Jennifer argues that the issue is moot because the trial court found that there was no change in circumstances. She contends, therefore, that the trial court could not make any modifications to the child support order. Additionally, she argues that Samuel cannot raise this issue on appeal because he did not object from the magistrate's decision or argue to the trial court that it had a duty to recalculate child support using the applicable worksheet.

**{¶ 29}** Addressing Jennifer's second argument first, Civ.R. 53(D)(3)(b)(iv) states, "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Here, Samuel objected to the magistrate's decision to impute income to him and its decision to deny his motion to modify child support. This is sufficient to preserve the issue for appeal.

**{¶ 30}** Turning to whether the trial court was required to complete a new worksheet, R.C. 3119.02 provides that "[i]n any action in which a court child support

10.

order is issued or modified . . . the court or agency *shall* calculate the amount of the parents' child support and cash medical support in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of Chapter 3119. of the Revised Code." (Emphasis added.) R.C. 3119.79(A) likewise provides, "If an obligor or obligee under a child support order requests that the court modify the amount of child support required to be paid pursuant to the child support order, the court *shall* recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet." (Emphasis added.)

{¶ 31}In *Marker v. Grimm*, 65 Ohio St.3d 139, 140-141 (1992), the Ohio Supreme Court considered an earlier version of the "comprehensive enactment governing the procedures a court must follow in calculating and awarding child support." It held that "(1) A child support computation worksheet must actually be completed and made a part of the trial court's record. (2) This requirement is mandatory and must be literally and technically followed. (3) Any court-ordered deviation must be supported by findings of fact and must be journalized." *DePalmo v. DePalmo*, 78 Ohio St.3d 535, 538 (1997), citing *Marker* at paragraphs one, two, and three of the syllabus. *Marker* specifically reasoned that the child support statutes "very clearly indicate that a worksheet must *actually* be completed for the order or modification of support to be made. The responsibility to ensure that the calculation is made using the schedule and worksheet rests with the trial court." (Emphasis sic.) *Marker* at 142. Notably, "[t]he trial court's

11.

failure to complete its own worksheet is not erroneous so long as the court clearly adopts one of the parties' worksheets." *Short v. Short*, 2019-Ohio-5315, ¶ 54 (11th Dist.), citing *Long v. Long*, 2005-Ohio-4052, ¶ 11 (3d Dist.). But, "[t]he adopted worksheet must be a fully completed worksheet containing all of the information that the trial court relied upon as mandated by statute." *Id.*, citing *Long* at ¶ 11.

{¶ 32}Here, the record does not contain any worksheet completed or adopted by the trial court relative to Samuel's motion to modify child support. The trial court's failure to include a completed worksheet is an abuse of discretion. *Long* at ¶ 10, citing *Rock v. Cabral*, 67 Ohio St.3d 108 (1993), paragraph one of the syllabus; *see also Short v. Short*, 2018-Ohio-3243, ¶ 27-29 (11th Dist.); *Johnson v. Melton*, 2010-Ohio-1522, ¶ 8 (12th Dist.); *Thompson v. Gonzalez*, 2006-Ohio-6033, ¶ 22-23 (8th Dist.); *Sapinsley v. Sapinsley*, 2005-Ohio-6773, ¶ 6-10 (1st Dist.).

{¶ 33}Accordingly, Samuel's first assignment of error is well-taken.

{¶ 34}In his second assignment of error, Samuel argues that prior to imputing income, the trial court was required to find that he was voluntarily underemployed. Although the trial court discussed the legal requirements to determine whether he was voluntarily unemployed or underemployed, it never expressly found that he was. Furthermore, Samuel argues that Jennifer did not satisfy her burden to prove that he was voluntarily underemployed. He contends that he was not voluntarily unemployed as a crane operator, rather he was laid off and left that employment involuntarily. He also

12.

claims that he continues to be involuntarily unemployed as a crane operator because of his physical condition as well as his need to provide care for his children.

{¶ 35}His third assignment of error again challenges the trial court's decision to impute $40,000 of income to him. He asserts that his imputed income was based on his earnings history from 2017 through 2019, but his circumstances have changed and between the years 2020 through 2022 he only earned an average of $21,333. In 2023, he testified that he was earning approximately $2,000 per month. He argues, therefore, that his income for determining child support should be $26,000 per year.

{¶ 36}Separately, in his third assignment of error, he argues that the trial court failed to consider additional deviations from the child support award under R.C. 3119.051, 3119.23, and 3119.231 that could apply because he has W.L. over 147 nights per year and because D.L. is a special needs child.

{¶ 37}Here, however, the trial court failed to recalculate the amount of child support in accordance with the applicable worksheet as statutorily required. *Marker* requires the completed worksheet to be in the record so that "an order or modification of support [may be] subject to meaningful appellate review." *Marker*, 65 Ohio St.3d at 142. Because the matter must be reversed and remanded for recalculation using the applicable worksheet, Samuel's second and third assignments or error, which challenge the trial court's original imputation of income, are moot.

13.

## B. Motion for Change of Custody

{¶ 38}In his fourth assignment of error, Samuel argues that the trial court erred when it denied his motion for change of custody including his request that he be allowed to make decisions regarding W.L.'s educational and medical needs.

{¶ 39}R.C. 3109.04(E)(1)(a) provides,

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

> (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

> (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

> (iii) The harm likely to be cause by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶ 40}"R.C. 3109.04 requires a finding of a 'change in circumstances.'" *Davis v. Flickinger*, 77 Ohio St.3d 415, 416 (1997). The change "must be a change of substance, not a slight or inconsequential change." *Id.* at 418.

> The clear intent of that statute is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a 'better' environment. The statute is an attempt to provide some

14.

stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment.

*Id.*, quoting *Wyss v. Wyss*, 3 Ohio App.3d 412, 416 (10th Dist. 1982).

{¶ 41}"In determining whether a 'change' has occurred, we are mindful that custody issues are some of the most difficult and agonizing decisions a trial judge must make." *Id.* "Therefore, a trial judge must have wide latitude in considering all the evidence before him or her . . . and such a decision must not be reversed absent an abuse of discretion." *Id.*, citing *Miller v. Miller*, 37 Ohio St.3d 71 (1988); *Short v. Rhodes*, 2021-Ohio-1845, ¶ 96 (6th Dist.). "The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness." *Id.* "This is even more crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does *not* translate to the record well." (Emphasis sic.) *Id.* at 419.

{¶ 42}Samuel argues that W.L.'s need for proper dental care constituted a change in circumstances. The trial court found that it did not.

{¶ 43}The trial court's decision is not an abuse of discretion. The issue of W.L.'s medical care featured prominently in the divorce proceedings. Indeed, it was well-documented that Jennifer only rarely sought medical intervention for her children. The fact that this issue manifested regarding W.L.'s dental care instead of medical care is not a new circumstance. Furthermore, it is worth noting that Samuel was able to take W.L. to the dentist and get the care that she needed.

15.

{¶ 44}Samuel's argument, therefore, that he had to seek dental treatment because Jennifer refused to do so—as well as his argument that he provides dental insurance for W.L. through Medicaid, and his implied suggestions in his brief that he may have chosen to vaccinate W.L., and may have taken her to the doctor more—falls into the category of him believing that he can provide a "better" environment, which is the type of argument cautioned against in *Flickinger*.

{¶ 45}Accordingly, the trial court did not err when it determined that there was not a change in circumstances to warrant a change in custody. Samuel's fourth assignment of error is not well-taken.

### C. Motion to Claim W.L. as a Dependent for Tax Purposes

{¶ 46}Finally, in his fifth assignment of error, Samuel argues the trial court erred when it denied his motion to allow him to claim W.L. as a dependent on his taxes every other year.

{¶ 47}A trial court's judgment allocating tax deductions and exemptions is reviewed for an abuse of discretion. *King v. King*, 2021-Ohio-2970, ¶ 45 (6th Dist.), citing *In re J.H.*, 2011-Ohio-6536, ¶ 13 (7th Dist.).

{¶ 48}R.C. 3119.82 provides, in pertinent part, that the trial court

> may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children and, with respect to orders the court modifies, reviews, or reconsiders, the payments for child support are substantially current as ordered by the court for the year in which the children will be claimed as dependents.

16.

The statute thus creates "a presumption in favor of granting the dependency tax exemption to the residential parent." *King* at ¶ 45. In making its determination, the court "shall consider" "any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children." R.C. 3119.82.

{¶ 49}Here, Jennifer testified that Samuel was not current on his child support obligations, but the trial court did not expressly make such a finding or consider that fact in its determination. Instead, the trial court found that Samuel did not present evidence regarding the statutory factors in R.C. 3119.82 to warrant a reallocation. He argues that the matter should be remanded for the trial court to take further testimony and evidence regarding those factors.

{¶ 50}Upon review, the trial court did not abuse its discretion. Since Samuel was seeking to change the trial court's existing order, it was his burden to put forth evidence regarding the statutory factors to allow the trial court to make its decision concerning the best interest of W.L. He failed to do so. The trial court's decision to maintain the presumption that the residential parent should receive the dependency tax exemption, therefore, was neither unreasonable, arbitrary, or unconscionable.

{¶ 51}Accordingly, Samuel's fifth assignment of error is not well-taken.

17.

## IV. Conclusion

{¶ 52}For the foregoing reasons, the judgment of the Wood County Court of Common Pleas, Domestic Relations Division, is affirmed, in part, and reversed, in part. The trial court's judgment denying Samuel's motion to change custody and to reallocate the right to claim W.L. on the parties' taxes is affirmed. The trial court's judgment denying his motion to modify child support is reversed, and the matter is remanded to the trial court to recalculate the amount of child support in accordance with the applicable worksheet as statutorily required. The parties are ordered to share the costs of this appeal evenly pursuant to App.R. 24.

Judgment affirmed, in part,
reversed, in part and remanded.


Gene A. Zmuda, J. _____

_____
JUDGE

Myron C. Duhart, J. _____

_____

Charles E. Sulek, P.J. _____
CONCUR.

JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.